**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: 512-420-8407

*Attorneys for Defendants Amirhossein Forouzani, Jason Andrew Vranek, Puffer Labs Corp., Puffer Foundation, and Puffer Staking Limited*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISHAL LALL,<br>Plaintiff,<br>vs.<br>AMIRHOSSEIN FOROUZANI, ET AL.,<br>Defendants. | Case No.: 3:25-cv-4948-EMC<br><br>**DEFENDANTS FOROUZANI, VRANEK, PUFFER LABS CORP., PUFFER FOUNDATION, AND PUFFER STAKING LIMITED'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**Hearing Date and Time:**<br>June 18, 2026 1:30 pm PT |

# TABLE OF CONTENTS


**I. INTRODUCTION ........................................ 1**

**II. ARGUMENT ........................................ 2**

**A. Plaintiff's Breach of Contract Claim (First Cause of Action) Should Be Dismissed As Time-Barred ........................................ 2**

**B. Plaintiff's Covenant of Good Faith and Fair Dealing Claim (Second Cause of Action) Is Time Barred ........................................ 5**

**C. Plaintiff's Quantum Meruit Claim (Third Cause of Action) Should Be Dismissed ........................................ 6**

1. Plaintiff Did Not Plead That Mr. Forouzani or Mr. Vranek Specifically Requested Services ........................................ 6
2. Plaintiff's Quantum Meruit Claim Is Time-Barred ........................................ 8

**D. Plaintiff's Unjust Enrichment Claims (Fourth and Seventh Causes of Action) Should Be Dismissed ........................................ 8**

**E. Plaintiff's Breach of Fiduciary Duty Claims (Fifth and Sixth Causes of Action) Should Be Dismissed ........................................ 12**

1. Plaintiff's Derivative Breach of Fiduciary Duty Claim (Fifth Cause of Action) Should Be Dismissed ........................................ 12
2. Plaintiff's Direct Breach of Fiduciary Duty Claim (Sixth Cause of Action) Should Be Dismissed ........................................ 12

**F. Plaintiff's Fraud Claim (Eighth Cause of Action) Should Be Dismissed ....... 14**

1. Plaintiff's Amended Complaint Pleads There Was No Justifiable Reliance ..... 14
2. Plaintiff's Fraud Claim is Barred by the Economic Loss Rule ........................ 16

**G. Plaintiff's Declaratory Judgment / Constructive Trust Claim (Ninth Cause of Action) Should Be Dismissed ........................................ 19**

1. Lall Fails to Allege Alter Ego Liability Against Puffer Corp. ........................ 19

2. Lall Fails to Allege Alter Ego Liability Against Puffer Ltd. and Puffer Foundation ........................................................................................................22
3. Lall Fails to Allege Entitlement to a Constructive Trust ..................................23
**III. CONCLUSION .......................................................................................................24**

# TABLE OF AUTHORITIES

Cases

*ABC Servs. Grp. v. Health Net of Cal., Inc.*,
No. SA CV 19-00243-DOC-DFM,
2020 U.S. Dist. LEXIS 78397 (C.D. Cal. May 4, 2020) ....7

*Aliya Medcare Fin., Ltd. Liab. Co. v. Nickell*,
No. CV 14-07806 MMM (Ex),
2015 U.S. Dist. LEXIS 89411 (C.D. Cal. July 9, 2015)....12

*Amaco Enters. v. Smolen*,
No. No. 93-16746, No. 94-16269, No. 94-16281,
1995 U.S. App. LEXIS 20486 (9th Cir. July 17, 1995) ....15

*Broad v. Sealaska Corp.*,
85 F.3d 422 (9th Cir. 1996) ....11

*Caspian Select Credit Master Fund Ltd. v. Gohl*,
No. 10244-VCN, 2015 Del. Ch. LEXIS 246 (Del. Ch. Sep. 28, 2015)....13

*Cent. Flyway Air, Inc. v. Grey Ghost Int'l, LLC*,
No. 3:20-cv-05506-BJR,
2022 U.S. Dist. LEXIS 232684 (W.D. Wash. Dec. 28, 2022) ....12

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ....19

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ....21

*Cleveland-Cliffs Burns Harbor Llc v. Boomerang Tube, LLC*,
2023 Del. Ch. LEXIS 359 (Del. Ch. Sept. 5, 2023) ....20, 21, 22

*Cohen v. State ex rel. Stewart*,
89 A.3d 65 (Del. 2014)....20

*DiRienzo v. Lichtenstein*,
No. 7094-VCP, 2013 Del. Ch. LEXIS 242 (Del. Ch. Sep. 30, 2013) ..........................13

*Durbin v. Hartford Life Ins. Co.*,
No. 13CV52 BEN (JLB), 2014 U.S. Dist. LEXIS 111604 (S.D. Cal. Aug. 11, 2014) ...5

*Empower Brands LLC v. Tristar Prods., Inc.*,
Civil Action No. 23-01225-RGA,
2024 U.S. Dist. LEXIS 225561 (D. Del. Dec. 12, 2024) ..........................................20

*Finney v. Ford Motor Co.*,
No. 17-cv-06183-JST, 2018 U.S. Dist. LEXIS 93823 (N.D. Cal. June 4, 2018) ...........4

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
539 A.2d 1060 (Del. 1988) ..........................................................................................11

*Gen. Am. Life Ins. Co. v. Castonguay*,
984 F.2d 1518 (9th Cir. 1993) .....................................................................................15

*Glob. Gaming Phil., LLC v. Razon*,
2022 U.S. Dist. LEXIS 50244 (S.D.N.Y. Mar. 21, 2022) ....................................19, 22

*Gracey v. Albawardi*,
No. 2024-0394-LWW, 2024 Del. Ch. LEXIS 383 (Del. Ch. Dec. 13, 2024) ..............20

*Guido v. Koopman*,
1 Cal. App. 4th 837 (1991) ..........................................................................................14

*Heresniak v. Musk*,
No. 22-cv-03074-CRB, 2023 U.S. Dist. LEXIS 89362 (N.D. Cal. May 22, 2023) ......12

*Hoffman v. 162 N. Wolfe LLC*,
228 Cal. App. 4th 1178, 175 Cal. Rptr. 3d 820 (2014) ..............................................14

*Hogg v. Walker*,
622 A.2d 648 (Del. 1993) ............................................................................................23

*In re Accuray, Inc. Shareholder Derivative Litigation*,
757 F. Supp. 2d 919 (N.D. Cal. 2010) .........................................................................11

*In re Digex Inc. Shareholders Litig.*,
789 A.2d 1176 (Del. Ch. Dec. 13, 2000) ........................................................................13
*In re Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*,
Nos. Chapter 15, 10-13164 (SMB), 10-03496 (SMB),
2021 Bankr. LEXIS 405 (Bankr. S.D.N.Y. Feb. 23, 2021) ..........................................24
*In re JMO Wind Down, Inc.*,
No. 16-10682 (BLS), 2018 Bankr. LEXIS 1126 (Bankr. D. Del. Apr. 13, 2018).........23
*In re Tyson*,
433 B.R. 68 (S.D.N.Y. 2010) ........................................................................................23
*Javo Bev. Co. v. Javy Coffee Co.*,
No. 22-547-RGA, 2023 U.S. Dist. LEXIS 12549 (D. Del. Jan. 25, 2023)......................9
*Julian v. TTE Tech., Inc.*,
No. 20-cv-02857-EMC, 2020 U.S. Dist. LEXIS 215039 (N.D. Cal. Nov. 17, 2020) ...10
*King v. Nat'l Gen. Ins. Co.*,
No. 15-cv-00313-DMR, 2025 U.S. Dist. LEXIS 169502 (N.D. Cal. Aug. 29, 2025)...11
*Laborers' Local v. Intersil*,
868 F. Supp. 2d 838 (N.D. Cal. 2012) ..........................................................................12
*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008) ..........................................................................................13
*LBF Travel Mgmt. Corp. v. Derosa*,
No. 20-cv-2404-MMA (AGS),
2022 U.S. Dist. LEXIS 150670 (S.D. Cal. Aug. 22, 2022) ..........................................14
*Leitner v. Sadhana Temple of N.Y., Inc.*,
No. CV 13-07902 MMM (Ex),
2014 U.S. Dist. LEXIS 198479 (C.D. Cal. Oct. 17, 2014)...........................................19
*Leo Invs. Hong Kong Ltd. v. Tomales Bay Capital Anduril III Ltd. P'ship*,
342 A.3d 1166 (Del. Ch. 2025) .....................................................................................12

*Manichaean Cap., LLC v. Exela Technologies, Inc.*,
251 A.3d 694 (Del. Ch. 2021) ....................................................................21
*Martinez-Ferrer v. Richardson-Merrell, Inc.*,
105 Cal. App. 3d 316, 164 Cal. Rptr. 591 (1980)...................................................2
*McMahon v. New Castle Associates*,
532 A.2d 601 (Del. Ch. 1987) ....................................................................23
*Metro Storage International LLC v. Harron*,
275 A.3d 810 (Del. Ch. 2022) ....................................................................20
*Mullins v. Premier Nutrition Corp.*,
No. 13-CV-01271-RS,
2018 U.S. Dist. LEXIS 10810, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018)................11
*Myo Aung v. Watts*,..........................................................................................
No. 2:24-cv-05501-SVW-AGR,
2024 U.S. Dist. LEXIS 237088 (C.D. Cal. Oct. 25, 2024).........................................18
*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ...........................................................................9
*Nieves v. Insight Bldg. Co.*,
2020 Del. Ch. LEXIS 256 (Del. Ch. Aug. 4, 2020)...................................................20
*Nodine v. Shiley Inc.*,
240 F.3d 1149 (9th Cir. 2001) ........................................................................3
*Oracle USA, Inc. v. XL Glob. Servs.*,
No. C 09-00537 MHP, 2009 U.S. Dist. LEXIS 59999 (N.D. Cal. July 13, 2009)........18
*Overhill Farms, Inc. v. Wicked Foods, Inc.*,
No. 2:25-cv-05178-SK, 2025 U.S. Dist. LEXIS 211768 (C.D. Cal. Oct. 6, 2025).......18
*Pac-12 Conference v. Mt. W. Conference*,
No. 24-cv-06685-SVK,
2026 U.S. Dist. LEXIS 66680 (N.D. Cal. Mar. 27, 2026).....................................17, 18

*Parker v. Walker*,
5 Cal. App. 4th 1173, 6 Cal. Rptr. 2d 908 (1992) ....................2

*Parseghian ex rel. Parseghian v. Frequency Therapeutics, Inc.*,
No. 2021-0551-PAF, 2022 Del. Ch. LEXIS 142 (Del. Ch. June 21, 2022) ....................24

*Pattern Design LLC v. We Are Sechey Inc.*,
No. 24-cv-02604-CRB, 2024 U.S. Dist. LEXIS 178761 (N.D. Cal. Oct. 1, 2024)....................17

*Payoda, Inc. v. Photon Infotech, Inc.*,
No. 14-cv-04103-BLF, 2015 U.S. Dist. LEXIS 100560 (N.D. Cal. July 30, 2015)....................22

*Qiuzi Hu v. Plehn-Dujowich*,
No. 18-cv-01791-EDL, 2019 U.S. Dist. LEXIS 240955 (N.D. Cal. Feb. 25, 2019)....................7

*Rattagan v. Uber Techs., Inc.*,
17 Cal. 5th 1, 324 Cal. Rptr. 3d 433, 553 P.3d 1213 (2024) ....................16, 17

*Roots Ready Made Garments v. Gap Inc.*,
No. C 07-03363 CRB, 2007 U.S. Dist. LEXIS 81108 (N.D. Cal. Oct. 18, 2007)....................8

*RSL COM Primecall, Inc. v. Beckoff (In re RSL COM Primecall, Inc.)*,
Nos. 01-11457, 01-11469 (ALG), 03-2176 (ALG),
2003 Bankr. LEXIS 1635 (Bankr. S.D.N.Y. Dec. 11, 2003) ....................22

*Salstein v. HA-Lo Indus.*,
82 F. Supp. 2d 1080 (N.D. Cal. 1999)....................14

*SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*,
No. 18-cv-07611-EDL, 2019 U.S. Dist. LEXIS 244309 (N.D. Cal. Oct. 10, 2019)....................13

*Skouras v. Admiralty Enterprise, Inc.*,
386 A.2d 674 (Del. Ch. 1978) ....................22

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................10

*Spellis v. Lawn*,
200 Cal. App. 3d 1075, 246 Cal. Rptr. 385 (1988)....................2, 4, 6

*SPUS8 Dakota LP v. KNR Contractors LLC*,
641 F. Supp. 3d 682 (D. Ariz. 2022) ....................21
*Stanford Health Care v. Blue Cross Blue Shield of N.C., Inc.*,
No. 21-cv-04598-BLF, 2022 U.S. Dist. LEXIS 11482 (N.D. Cal. Jan. 21, 2022)..........6
*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
No. 17-CV-03871-LHK, 2017 U.S. Dist. LEXIS 167462 (N.D. Cal. Oct. 10, 2017).....7
*Sunnyside Dev. Co. v. Opsys Ltd.*,
No. C 05-0553 MHP, 2005 U.S. Dist. LEXIS 39303 (N.D. Cal. Aug. 8, 2005)...........23
*Symington v. Guillen*,
2016 WL 7486603 (C.D. Cal. June 30, 2016) ....................9
*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ....................13
*Vahora v. Masood*,
No. 1:16-cv-1624-LJO-SKO,
2017 U.S. Dist. LEXIS 50655 (E.D. Cal. Apr. 3, 2017) ....................5
*Veasna Chan Hun v. Hajjar*,
No. CV 18-10330 PSG (KSx),
2019 U.S. Dist. LEXIS 163225 (C.D. Cal. May 30, 2019) ....................18
*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*,
2022 WL 611274 (Del. Ch. Mar. 2, 2022) ....................19
*Viramontes v. Pfizer, Inc.*,
No. 2:15-cv-01754 TLN AC,
2018 U.S. Dist. LEXIS 114646 (E.D. Cal. July 9, 2018) ....................3
*Vishva Dev, M.D., Inc. v. Blue Shield of Cal. Life & Health Ins. Co.*,
2 Cal. App. 5th 1218, 207 Cal. Rptr. 3d 185 (2016) ....................8
*VTB Bank v. Navitron Projects Corp.*,
No. 8514-VCN, 2014 Del. Ch. LEXIS 61 (Del. Ch. Apr. 28, 2014)............................23

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) ....................................................................20, 21, 22

*Wenske v. Blue Bell Creameries, Inc.*,
No. 2017-0699-JRS, 2018 Del. Ch. LEXIS 530 (Del. Ch. Nov. 13, 2018)..................20

*Zecos v. Nicholas-Applegate Capital Mgmt.*,
42 F. App'x 31 (9th Cir. 2002).........................................................................2

Statutes

Cal. Code Civ. Proc. § 339 .............................................................................2, 5, 8

Treatises

1 FLETCHER CYCLOPEDIA L. CORP. § 43.7 ..........................................................20

Defendants Amirhossein Forouzani, Jason Vranek (the "Individual Defendants"), Puffer Labs Corp. ("Puffer Corp."), Puffer Foundation, and Puffer Staking Limited ("Puffer Ltd.," and together with Puffer Corp. and Puffer Foundation, the "Puffer Entities") respectfully submit this memorandum of law in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Verified Direct and Derivative Action Amended Complaint filed by Plaintiff Vishal Lall (ECF No. 60), to be heard on June 18, 2026 at 1:30 pm PT.

## I. INTRODUCTION

This case concerns two separate crypto business ventures: one that the Individual Defendants founded with Lall, and another, built entirely by the Individual Defendants, that Lall has nothing to do with and that he now opportunistically seeks to cash in on through litigation. After being given leave to amend his original Complaint to address specific details with the four claims he originally raised, Mr. Lall has now added five more causes of action, for a total of nine. These new causes of action amount to a "throw spaghetti at the wall and see what sticks" approach to the case. But there is a reason these tenuous claims were not raised originally and are only being added now. Each suffers from a fatal difficulty. Several of them are subject to a two-year statute of limitations, which Lall does not meet, and whose period cannot be tolled because his own pleadings make clear that he discovered all of the facts underlying his claims very early in the dispute between the parties. Because he now suddenly claims that there was an oral contract between the parties, which he did not raise as a cause of action originally, others are barred by the economic loss rule. And he has still not addressed the difficulties with his original claims, namely, that he blurs the distinction between himself and the corporate entities to hide that he cannot identify with clarity who has actually been injured. If anything, he has only made that issue more serious by claiming more and more of the injuries were to himself personally, even though as a legal matter, the Portal Entities were the only ones who could make such a claim. Because Lall has not corrected the issues with his original complaint, but has instead tried to circumvent them by raising any and every theory of

liability he could think of to add to the case, this action should be dismissed. And because he has been given an opportunity to amend already, that dismissal should be with prejudice.

## II. ARGUMENT

### A. Plaintiff's Breach of Contract Claim (First Cause of Action) Should Be Dismissed As Time-Barred

Lall has added several new causes of action to his Amended Complaint, and now alleges for the first time that an oral contract existed and was breached. The statute of limitations for breach of an oral contract is two years. Cal. Code Civ. Proc. § 339. And crucially, "[i]n a suit to enforce an oral agreement, **the statute of limitations in Code of Civil Procedure section 339(1) begins to run when the oral contract is repudiated**." *Parker v. Walker*, 5 Cal. App. 4th 1173, 1190, 6 Cal. Rptr. 2d 908 (1992) (emphasis added).

"A cause of action for a breach of an oral contract accrues at the time of the breach, *i.e.,* when the party charged with the duty to perform under the contract fails to perform." *Zecos v. Nicholas-Applegate Capital Mgmt.*, 42 F. App'x 31, 32 (9th Cir. 2002) (unpublished).

It is a "fundamental rule that the statute begins to run from the time conduct becomes actionable." *Spellis v. Lawn*, 200 Cal. App. 3d 1075, 1080-81, 246 Cal. Rptr. 385 (1988). As that court held:

> [Where] an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. *It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date . . . .*

*Id.* (emphasis, brackets, and ellipses in original) (quoting *Martinez-Ferrer v. Richardson-Merrell, Inc.*, 105 Cal. App. 3d 316, 323, 164 Cal. Rptr. 591 (1980)).

Whenever Lall first purportedly suffered any injury—however slight—from the alleged breach of contract, the two-year statute of limitations began to run. And it is of no

import to the statute of limitations analysis if other, more substantial injury occurred later, or if there was a continuous, ongoing injury. *See Nodine v. Shiley Inc.*, 240 F.3d 1149, 1153-54 (9th Cir. 2001) ("Plaintiffs, however, cannot revive the statute of limitations by claiming they incurred new damages as a result of the old fraud."); see also *Viramontes v. Pfizer, Inc.*, No. 2:15-cv-01754 TLN AC, 2018 U.S. Dist. LEXIS 114646 at *22-23 (E.D. Cal. July 9, 2018) ("Plaintiff may not use the fact that the impact of his wife's injuries on the marriage has ebbed and flowed to split his claim. Even if Ms. Viramontes received an additional diagnosis at a later date, her symptoms allegedly stem from the same underlying tort, which first resulted in plaintiff's loss of consortium in 2003.").

Lall's Amended Complaint pleads that: "On information and belief, the Individual Defendants have effectively abandoned the Portal Entities since November 2022." Dkt. 60 at ¶ 144. He pleads that: "To unlawfully avoid performance of the Founders' Token Agreement, the Individual Defendants formally dissolved Portal B.V.I. and the Portal Foundation, and effectively abandoned Portal Oracle itself." *Id.* at ¶ 157. He further pleads that these dissolutions—which he alleges specifically underly his breach of contract claim—took place in April 2023 and September 2023. For Portal B.V.I., he pleads: "The Individual Defendants formally dissolved Portal B.V.I. in September 2023, after they had misappropriated all of its assets for their own and Puffer B.V.I.'s benefit." *Id.* at ¶ 32. For Portal Foundation, he pleads: "The Individual Defendants formally wound down the Portal Foundation in or around April 2023." *Id.* at ¶ 30.

Lall pleads in his breach of contract claim that these dissolutions injured him and breached the contract by preventing the issuance of Portal tokens: "To unlawfully avoid satisfying this reasonable expectation, to provide Lall his rightful share of tokens, the Individual Defendants formally dissolved Portal B.V.I. and the Portal Foundation, and effectively abandoned Portal Oracle itself." *Id.* at ¶ 183. Lall's claim for breach of contract was not filed until April 3, 2026. Dkt. 60. It was not included at all in the original complaint, filed on June 11, 2025, which did not plead either breach of contract or breach of the implied covenant. Dkt. 1 at 21-24.

Even using the date of June 11, 2025, the date of the original complaint, if the alleged injury—however slight—was sustained by Lall before June 11, 2023, then this claim is time-barred. *Spellis v. Lawn*, 200 Cal. App. 3d at 1080-81. And his own pleadings claim that he was allegedly injured by that date.

He alleges that the scheme began in November 2022. Dkt. 60 at ¶ 144. And he alleges that at least one entity—Portal Foundation—had been publicly legally dissolved in April 2023. *Id.* at ¶ 30. He specifically alleges that injury had occurred by February 24, 2023. *Id.* at ¶ 105, 109. All of this was more than two years before the lawsuit was filed.

And Lall cannot save his claim via the discovery rule, because as explained above, he has also pled that he realized that the alleged scheme was afoot in November 2022. *See, e.g.,* Dkt. 60 at ¶ 90. To invoke this rule, he would have had to specifically plead facts showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 U.S. Dist. LEXIS 93823 at *6 (N.D. Cal. June 4, 2018). Not only has Lall pled that he specifically realized that the scheme existed in November 2022, but he has specifically pled that various activities were publicly available, and thus easily discoverable. He specifically pleads that the alleged asset transfers can be seen on "public blockchain activity." Dkt. 60 at ¶ 71. He pleads that he received two paychecks labeled as being from the Puffer Entities immediately after he was fired, and that in May 2023 the Puffer Entities demanded he repay them. Dkt. 60 at ¶ 113. He pleads that Portal assets were used by Puffer on a "public account founded by Lall," which means he had access to it. *Id.* at ¶ 95. He pleads that the scheme was revealed by publicly available marketing materials as well. *Id.* at ¶ 128. He pleads that the April 2023 corporate dissolution of Portal Foundation was a breach which injured him. He alleges that immediately after "ousting" him, the Defendants "started stripping references to the Portal Entities from the Internet" and replacing them with references to the Puffer Entities. *Id.* at ¶ 95. And he specifically pleads that in November 2022 he "expressed his dismay that the Individual Defendants appeared to be cutting him out of his own company" in communications to the Defendants. *Id.* at ¶ 90.

Lall's allegations preclude the application of the discovery rule. He knew of the alleged scheme at least as of November 2022. He was allegedly injured at least as of April 2023, when one of the actions occurred that he claims injured him under this cause of action (dissolution of Portal Foundation). He knew about the Puffer Entities at least as of May 2023 when they allegedly asked him to repay two paychecks. And yet he did not file his lawsuit until more than two years after this alleged completed injury.

**B. Plaintiff's Covenant of Good Faith and Fair Dealing Claim (Second Cause of Action) Is Time Barred**

Lall's claim for breach of the covenant of good faith and fair dealing expressly states that it is based entirely on an oral contract. Dkt. 60 at ¶ 165. Because the contract underlying the claim was oral, "[t]he statute of limitations for breach of the covenant of good faith and fair dealing is two years, rather than four years." *Durbin v. Hartford Life Ins. Co.*, No. 13CV52 BEN (JLB), 2014 U.S. Dist. LEXIS 111604 at *18-19 (S.D. Cal. Aug. 11, 2014); *Vahora v. Masood*, No. 1:16-cv-1624-LJO-SKO, 2017 U.S. Dist. LEXIS 50655 at *38-39 (E.D. Cal. Apr. 3, 2017) (explaining that the statute of limitations depends on whether the underlying contract was oral or written); *see also* Cal. Code Civ. Proc. § 339.

As explained above on the first cause of action, whenever Lall first suffered any alleged injury—however slight—from the alleged breach of the duty of good faith and fair dealing, the two-year statute of limitations began to run. Lall's Amended Complaint pleads: that "On information and belief, the Individual Defendants have effectively abandoned the Portal Entities since November 2022." Dkt. 60 at ¶ 144. He specifically pleads that the dissolution of the Portal Entities violated the covenant of good faith and fair dealing: "In violation of their covenant of good faith and fair dealing, the Individual Defendants formally dissolved Portal B.V.I. and the Portal Foundation, and effectively abandoned Portal Oracle itself." *Id.* at ¶ 169. And he further pleads that the alleged scheme in general—which he says began in November 2022—was a breach of the implied covenant: "The Individual Defendants' scheme to substitute the Puffer Defendants for the Portal Entities, in circumvention of their obligations to Lall individually, constitutes a clear

violation of their covenant of good faith and fair dealing under the Founders' Token Agreement." *Id.* at ¶ 175.

Lall's claim for breach of the implied covenant of good faith and fair dealing was not filed until April 3, 2026. Dkt. 60. It was not included at all in the original complaint, filed on June 11, 2025, which did not plead either breach of contract or breach of the implied covenant. Dkt. 1 at 21-24.

As explained above, if the alleged injury—however slight—was sustained by Lall before June 11, 2023, then this claim is time-barred. *Spellis v. Lawn*, 200 Cal. App. 3d at 1080-81. Lall points to the overall "scheme" as violating these duties—but then also pleads that he knew about the scheme in November 2022, and that the dissolution of Portal Foundation happened in April 2023. On the face of the complaint, the claim had thus accrued at least as of that date, and is time-barred.

**C. Plaintiff's Quantum Meruit Claim (Third Cause of Action) Should Be Dismissed**

**1. Plaintiff Did Not Plead That Mr. Forouzani or Mr. Vranek Specifically Requested Services**

Plaintiff has pled that the Individual Defendants "accepted the services provided by Lall"—but he has not plead that they made a specific request for the services. *See* dkt. 60 at ¶ 179. And that is fatal to a quantum meruit claim. In *Stanford Health Care v. Blue Cross Blue Shield of N.C., Inc.*, No. 21-cv-04598-BLF, 2022 U.S. Dist. LEXIS 11482 at *27 (N.D. Cal. Jan. 21, 2022), the court collected "ample caselaw" holding that the plaintiff must plead that defendant "explicitly or impliedly requested the services at issue in order to plausibly allege a quantum meruit claim." Importantly, Lall is pleading that his services were not performed for Mr. Forouzani or Mr. Vranek, but for the Portal Entities. The requirement to prove that Mr. Forouzani and Mr. Vranek specifically requested the services at issue is something that "courts require, particularly when the services at issue are provided to a third party." *Id.* at *26.

And **authorizing** the performance of the alleged services does not satisfy the element of **requesting** the services: "Even assuming that Defendants verified coverage and

authorized Plaintiff to provide substance abuse treatment services through these alleged representations, Plaintiffs have not alleged enough facts to plausibly suggest that Defendants *requested* Plaintiff to render those services because, as alleged in Plaintiff's complaint, Plaintiff initiated contact with Defendants to verify coverage and seek authorization." *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-CV-03871-LHK, 2017 U.S. Dist. LEXIS 167462 at *33-34 (N.D. Cal. Oct. 10, 2017) (emphasis in original); *see also ABC Servs. Grp. v. Health Net of Cal., Inc.*, No. SA CV 19-00243-DOC-DFM, 2020 U.S. Dist. LEXIS 78397 at *24 (C.D. Cal. May 4, 2020) ("But Plaintiff does not allege that any Moving Defendant *requested* that Plaintiff treat any of the Patients (as opposed to *authorizing* treatment and verifying benefits). The Court therefore finds that Plaintiff's claims for *quantum meruit* should be dismissed.") (emphasis in original). Courts have noted the contrast between California's requirements for quantum meruit claims with some other states on this issue: "[A] plaintiff asserting a quantum meruit claim under California law must show that the defendant either expressly or impliedly requested that the plaintiff perform services but a plaintiff asserting a quantum meruit claim under Florida law must show merely that the defendant assented to receiving the services." *Qiuzi Hu v. Plehn-Dujowich*, No. 18-cv-01791-EDL, 2019 U.S. Dist. LEXIS 240955 at *25 (N.D. Cal. Feb. 25, 2019).

Not only does Lall not plead that Mr. Forouzani or Mr. Vranek requested his services, but throughout his pleadings, he portrays himself as a co-founder of the Portal Entities, rather than a mere service provider working at their request as a quantum meruit claim would require. He opens his complaint by pleading that the three were "[c]ollaborating as equal partners" when he performed these services. Dkt. 60 at ¶ 2. He pleads that the three co-founders agreed jointly to work together and found a company. *Id.* at ¶ 42. He pleads that he was working as a Chief Product Officer for the Portal Entities when he was providing the services at issue. *Id.* at ¶ 52. And he pleads that this was not a request for services from the two individual Defendants, but as a result of a group decision to work together. *Id.* at ¶ 42. He specifically states that: "Lall acted as an equal co-founder

of the Portal Entities throughout 2022, in advance of their planned token issuance and sale." *Id.* at ¶ 155.

Quantum meruit under California law is not intended to encompass scenarios such as the one Lall has described in his Complaint. Having repeatedly pled that he was performing these services as part of an equal collaboration between co-founders, he cannot now try to shoehorn this into a narrow equitable claim that only applies to a defendant who specifically requests the performance of those services.

**2. Plaintiff's Quantum Meruit Claim Is Time-Barred**

"The statute of limitations for quantum meruit claims is two years." *Vishva Dev, M.D., Inc. v. Blue Shield of Cal. Life & Health Ins. Co.*, 2 Cal. App. 5th 1218, 1223, 207 Cal. Rptr. 3d 185 (2016); Cal. Code Civ. Proc. § 339. "The statute of limitations for quasi-contractual claims begins to run immediately upon performance of the service at issue." *Roots Ready Made Garments v. Gap Inc.*, No. C 07-03363 CRB, 2007 U.S. Dist. LEXIS 81108 at *12 (N.D. Cal. Oct. 18, 2007). In *Roots Ready Made*, the court limited a quantum meruit claim to any services performed within two years of the filing of suit: "Because the statute of limitations begins to run immediately upon performance of the service at issue, Roots can only maintain an action for services rendered *after* June 25, 2005."

As explained above with respect to the contractual claims, Lall waited to file this lawsuit until June 11, 2025. But he pleads that these services were performed prior to the end of October 2022, dkt. 60 at ¶ 78-79, and that he was removed from the company entirely in November 2022, *id.* at ¶ 84-89. All of the services he allegedly performed were thus performed more than two years before the lawsuit was filed, and as explained above, all of Lall's claims had separately accrued by at least April 2023. The quantum meruit claim should therefore be dismissed in its entirety as time-barred.

**D. Plaintiff's Unjust Enrichment Claims (Fourth and Seventh Causes of Action) Should Be Dismissed**

Plaintiff has now pled two causes of unjust enrichment—one against the individual Defendants only (the Fourth Cause of Action) and one against all Defendants (the Seventh

Cause of Action). Neither are asserted as derivative claims, and indeed, the Seventh Cause of Action expressly states they are being raised by Lall solely as an individual. Dkt. 60 at ¶ 70. This is for good reason: Lall has played a shell game with the amended complaint, abandoning the prior derivative unjust enrichment claim on behalf of Portal to replace it with two causes of action on his own behalf. *See* dkt. 1 at ¶ 110-117. These direct claims are meritless, as the Court previously signaled at the December 4, 2025 hearing on Defendants' initial motion to dismiss. *See* Dkt. 48 at 14 ("I am skeptical of the direct claim of fiduciary breach because generally there's not a duty to buy back stock, and I -- and so I don't see that. So you might want to think about dropping that if you amend.").

Lall has also largely abandoned his claims against the Puffer Entities, with only equitable claims against them remaining (the Seventh and Ninth Causes of Action). This is a transparent effort to pick an equitable remedy instead of a legal one for strategic purposes. But the law does not allow that strategic choice. For equitable remedies to be available, a legal remedy must be absent. This re-pleading shell game—and especially the voluntary decision to add a breach of contract claim—mandates dismissal.

To plead an unjust enrichment claim, a plaintiff must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).[1] Lall has failed to plead at least two of these elements: that there is no adequate remedy at law, and that each of the Defendants was enriched at the expense of himself specifically.

As to the absence of an adequate remedy at law, Delaware courts have dismissed unjust enrichment claims where, as here, the "unjust enrichment claim is simply a recharacterization of [other] claims [that,] if proven, provide for an adequate remedy at law." *Javo Bev. Co. v. Javy Coffee Co.*, No. 22-547-RGA, 2023 U.S. Dist. LEXIS 12549 at *6 (D. Del. Jan. 25, 2023) (dismissing unjust enrichment claim after denying motion to

[1] Under the "internal affairs" doctrine, Delaware law applies to the unjust enrichment claim. *See Symington v. Guillen*, 2016 WL 7486603, at *8 (C.D. Cal. June 30, 2016).

dismiss trademark claims). The Complaint does not even allege that there is no adequate remedy at law, let alone facts supporting this element. This is fatal to the claim. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("Initially, the operative complaint does not allege that Sonner lacks an adequate legal remedy."); *see also Julian v. TTE Tech., Inc.,* No. 20-cv-02857-EMC, 2020 U.S. Dist. LEXIS 215039 at *11 (N.D. Cal. Nov. 17, 2020) (Chen, J.) (rejecting unjust enrichment claim because "on the face of the complaint, it appear[ed] that what [p]laintiffs[] claim for damages and restitution are not really different" and "[p]laintiffs have not demonstrated the inadequacy of a legal remedy").

Here, similar to *Sonner* and *Julian*, Lall seeks monetary damages for the exact same harms not only individually, but via other derivative claims for breach of fiduciary duty. *See, e.g.*, dkt. 1 at ¶ 7 (alleging that "Defendants abandoned the Portal Entities and misappropriated their assets, causing millions of dollars in damages"); *id.* at ¶ 103 ("As a direct result of the Individual Defendants breaching their fiduciary duties, Portal's shareholders have been damaged and will continue to suffer damages in an amount to be determined at trial but believed to be in excess of ten million dollars."); compare to dkt. 60 at ¶ 195-205.

Yet Lall does not plead anything in his Amended Complaint about why those legal remedies are unavailable. *Sonner* and *Julian* make clear that he **<u>must</u>** include allegations about the lack of an adequate remedy at law in his Complaint. It is, after all, an element of the claims. The closest he comes is to allege that he cannot bring derivative claims in the British Virgin Islands or Cayman Islands on behalf of the two entities there. Dkt. 60 at ¶ 214. But he provides no explanation at all about either the breach of fiduciary duty claims, the breach of contract claim, or the covenant of good faith and fair dealing claim.

It is clear why Lall has attempted this maneuver: a decision in this District surveyed the law on this issue in detail and held that where a legal claim is "rooted in the same theory" as an equitable claim, an adequate remedy at law exists. *King v. Nat'l Gen. Ins. Co.*, No. 15-cv-00313-DMR, 2025 U.S. Dist. LEXIS 169502 at *27-28 (N.D. Cal. Aug.

29, 2025). The bare-bones unjust enrichment claims here pled the same theory as the legal claims, only now on behalf of Lall himself instead of Portal Corp. They are also based on the same alleged breach of fiduciary duty in the First, Second, Fifth, and Sixth Causes of Action, all claims at law. As the *King* court held, this is a defect that even amendment cannot cure: "In the Ninth Circuit, the relevant test is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that pursuit." *Id.* at *27 (quoting *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2018 U.S. Dist. LEXIS 10810, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018)).

Delaware law also requires a plaintiff to allege that defendants were "unjustly enriched at the expense of [the plaintiff]." *In re Accuray, Inc. Shareholder Derivative Litigation*, 757 F. Supp. 2d 919, 935 (N.D. Cal. 2010); *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) ("Before the court may properly award restitution, it must find that the defendant was unjustly enriched at the expense of the plaintiff."). The original Complaint pled that Defendants were enriched by diverting "Portal's assets"—including "prospective business leads, intellectual property, and software code" (Dkt. 1 at ¶ 112; *see also id.* at ¶ 113 (similar, alleging loss of fees)). Yet now, Lall himself is individually claiming unjust enrichment based on the Portal Entities' assets being transferred.

Lall pleads no facts showing that those were in fact assets of Portal Corp. (of which he owns shares) and not of other Portal Entities. He does not plead that any of the allegedly diverted assets or opportunities were his own, as opposed to those of the Portal Entities. "[C]orporate shareholders do not directly own any part of a corporation's property or assets. They only own shares of stock, which represent a proportionate interest in the corporate equity remaining after a corporation meets all its other debts and obligations. The profits themselves belong to the corporation, and do not pass to the shareholders unless and until the board of directors declares a dividend." *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996). Courts have dismissed unjust enrichment claims where Delaware shareholders attempted to artfully plead it as a way around the corporation's ownership interests. *See*

*Heresniak v. Musk*, No. 22-cv-03074-CRB, 2023 U.S. Dist. LEXIS 89362 at *24-25 (N.D. Cal. May 22, 2023). For a shareholder to sue individually, as opposed to through a derivative claim, their injuries must be independent of any injury to the corporation. *Cent. Flyway Air, Inc. v. Grey Ghost Int'l, LLC*, No. 3:20-cv-05506-BJR, 2022 U.S. Dist. LEXIS 232684 at *15 (W.D. Wash. Dec. 28, 2022) ("Absent any demonstrated harm suffered by GGI independent of the alleged injury to GGGC, GGI cannot establish that it has standing to assert its claims for breach of fiduciary duty, conspiracy, unjust enrichment, and conversion. Those claims properly belong to GGGC as the allegedly injured corporation.").

**E. Plaintiff's Breach of Fiduciary Duty Claims (Fifth and Sixth Causes of Action) Should Be Dismissed**

**1. Plaintiff's Derivative Breach of Fiduciary Duty Claim (Fifth Cause of Action) Should Be Dismissed**

Under Delaware law,[2] the elements for a breach of fiduciary duty claim are (1) "the existence of a fiduciary duty," (2) "a breach of that duty," (3) "harm to the beneficiary or a benefit wrongly received by the fiduciary," and (4) a "causal linkage between the breach and the remedy sought." *Leo Invs. Hong Kong Ltd. v. Tomales Bay Capital Anduril III Ltd. P'ship*, 342 A.3d 1166, 1192-93 (Del. Ch. 2025). As explained above, Lall fails to adequately plead that the Individual Defendants diverted assets or opportunities belonging to Portal Corp. rather than the other Portal Entities. See § II(B), supra. For that same reason, the Complaint fails to establish that the Individual Defendants breached duties owed specifically to Portal Corp.—the only entity on whose behalf Lall asserts his derivative claim. *See, e.g., Aliya Medcare Fin., Ltd. Liab. Co. v. Nickell*, No. CV 14-07806 MMM (Ex), 2015 U.S. Dist. LEXIS 89411 at *71 (C.D. Cal. July 9, 2015) ("Conclusory allegations of a fiduciary duty and breach thereof do not suffice.") (internal quotations and citation omitted).

**2. Plaintiff's Direct Breach of Fiduciary Duty Claim (Sixth Cause of Action) Should Be Dismissed**

---

[2] "[T]he law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders." *Laborers' Local v. Intersil*, 868 F. Supp. 2d 838, 844 (N.D. Cal. 2012).

The Sixth Cause of Action alleges a breach of fiduciary duty by the Individual Defendants, and asserts it on behalf of Lall only. But the harms for which Lall seeks over ten million dollars in damages personally for himself (Dkt. 60 at ¶ 205) are derivative claims that can only be brought by the Portal Entities. Lall has based this claim entirely on claims relating to "the misappropriation of the Portal Entities' assets and opportunities." *Id.* at ¶ 208. This requires dismissal. *See, e.g., Caspian Select Credit Master Fund Ltd. v. Gohl*, No. 10244-VCN, 2015 Del. Ch. LEXIS 246 at *14 (Del. Ch. Sep. 28, 2015) (claims brought as direct claims that "fail to state direct claims" "must be dismissed"); *LaSala v. Bordier et Cie*, 519 F.3d 121, 131 (3d Cir. 2008) (applying Delaware law: "[I]ndividual shareholders do not have standing to assert directly state-law claims alleging harm to a corporation. Instead, those claims must be asserted by the corporation itself or through shareholder derivative litigation.").

Whether a claim is derivative or direct "turn[s] solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). Lall himself has answered that question: it is the Portal Entities who he alleges were harmed, and the Portal Entities who should receive the benefit of any recovery or remedy. *See SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*, No. 18-cv-07611-EDL, 2019 U.S. Dist. LEXIS 244309 at *17 (N.D. Cal. Oct. 10, 2019) (plaintiff's claims that the directors "breached their fiduciary duties by causing [the company] to transfer all of its assets . . . without any consideration" was derivative); *In re Digex Inc. Shareholders Litig.*, 789 A.2d 1176, 1190 (Del. Ch. Dec. 13, 2000) ("[T]he claim that the defendants usurped a corporate opportunity must necessarily constitute an 'injury' to the corporation and thus be a derivative claim."); *DiRienzo v. Lichtenstein*, No. 7094-VCP, 2013 Del. Ch. LEXIS 242 at *88 (Del. Ch. Sep. 30, 2013) ("DiRienzo has alleged only a traditional usurpation of corporate opportunity claim, which under settled Delaware law is exclusively derivative in nature."); *LBF Travel Mgmt. Corp. v. Derosa*, No. 20-cv-2404-MMA (AGS),

2022 U.S. Dist. LEXIS 150670 at *26-27 (S.D. Cal. Aug. 22, 2022). Lall is attempting to recover over ten million dollars personally for alleged harms to the Portal Entities. That is a derivative (not direct) claim, and the Sixth Cause of Action should be dismissed.

**F. Plaintiff's Fraud Claim (Eighth Cause of Action) Should Be Dismissed**

**1. Plaintiff's Amended Complaint Pleads There Was No Justifiable Reliance**

A core element of a common law fraud is not just reliance, but justifiable reliance given the facts known to the Plaintiff. "Justifiable reliance is an essential element of a claim for fraudulent misrepresentation, and the reasonableness of the reliance is ordinarily a question of fact. . . . However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Salstein v. HA-Lo Indus.*, 82 F. Supp. 2d 1080, 1087 (N.D. Cal. 1999) (quoting *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991)) (ellipses in original).

As to justifiable reliance, "a plaintiff's particular knowledge and experience should be considered in determining whether the reliance upon the misrepresentation or nondisclosure was justified." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194, 175 Cal. Rptr. 3d 820 (2014). "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable … he will be denied a recovery." *Id.*

Both the original and Amended Complaint were unequivocal about Plaintiff's reaction to the Defendants' meeting with him on November 2, 2022: "**Lall, realizing that he was being coerced out of his rightful ownership in Portal Oracle and its offshore affiliates**, refused to agree to or sign any of the exit documents." Dkt. 60 at ¶ 85 (emphasis added). But this factual admission is fatal to his newfound effort to plead a fraud claim, because taking the Complaint at face value, Lall not only did not rely on any misrepresentations or omissions, but personally believed that the Defendants were attempting to coerce him out of his ownership as of November 2, 2022.

As to Lall's sophistication, his pleadings make himself out to be highly sophisticated. He pleads that: (1) he was a data scientist at NASA's Jet Propulsion Laboratory, dkt. 60 at ¶ 33; (2) in that role he was more sophisticated than Mr. Forouzani, who Lall pleads was his junior and his mentee, *id.* at ¶ 33; and (3) he was an AI researcher, Blockchain engineer, and Smart Contract Developer, *id.* at ¶ 44.

The 9th Circuit has affirmed dismissal of fraud claims where a large amount of money was at stake and there were "tell-tale danger signals that should have alerted [plaintiff] to the need for further investigation…." *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1520-21 (9th Cir. 1993). There, a plaintiff insurance company sued defendants alleging that they had made fraudulent representations that a trust was solvent, when actually it was "in deep trouble" and "$1.7 million in the red." *Id.* The defendants claimed the trust's financial statements were unavailable and provided a document listing only its assets, not its liabilities. *Id.* That was enough for the 9th Circuit to foreclose a fraud claim as a matter of law: "any sensible business entity would have questioned Sieben's statement that this multi-million-dollar trust had no financial documents. The very absence of current financial data should have set off bells…." *Id.* at 1520.

In another case, *Amaco Enters. v. Smolen*, No. No. 93-16746, No. 94-16269, No. 94-16281, 1995 U.S. App. LEXIS 20486 at *3-4 (9th Cir. July 17, 1995), a lender relied on outdated financial statements despite knowing that they would no longer accurately reflect key figures. The Ninth Circuit held as a matter of law that fraud by omission claims were foreclosed because the lender could not have justifiably relied on the accuracy of those financial statements without further investigation. *Id.*

The facts Lall has pled are even more egregious than the ones that compelled dismissal in *Castonguay* and *Amaco*. Rather than there merely being "tell-tale danger signals" or warning signs that "should have set off bells," Lall has gone further and pled that he had actual knowledge in November 2022 that "he was being coerced out of his rightful ownership in Portal Oracle and its offshore affiliates." Once he had this realization,

he could not reasonably claim to be relying on representations from the same individuals he believed were actively trying to coerce him out of his "rightful ownership."

Beyond this actual knowledge, Lall has pled that: (1) in November 2022 he was locked out of accessing Portal's corporate files and systems, dkt. 60 at ¶ 87; (2) his employment was terminated and he was removed as a director, *id.* at ¶ 89; (3) also in November 2022, he "expressed his dismay that the Individual Defendants appeared to be cutting him out of his own company," *id.* at ¶ 90; and (4) just a few months later the Defendants were publicly posting about their transition to Puffer, *id.* at ¶ 114.

Lall, who touts his own sophistication in the Amended Complaint, has not only pled that he was aware of repeated warning signs about the scheme he alleges, but that he had actual knowledge that the scheme was afoot, and that he expressed his dismay to the Defendants about it. Accepting his own allegations as true, to the extent he then continued to rely on disclosures or representations made by the Defendants after he had this knowledge, it could not possibly have been justifiable.

**2. Plaintiff's Fraud Claim is Barred by the Economic Loss Rule**

Lall has pled that he entered into an oral contract with Mr. Forouzani and Mr. Vranek as to token allocation. Dkt. 60 at ¶ 66. He expressly pleads a breach of contract claim based on this agreement against those two defendants. Dkt. 60 at ¶¶ 153-63. And crucially, the breach of contract he alleges is based on the exact same conduct which forms the basis of his fraud claim: the creation of the Puffer Entities, and the allocation of tokens through those entities instead of the Portal Entities. *Id.* at ¶¶ 157-62. Because of this overlap, the fraud claim is barred by the economic loss rule.

"The economic loss rule is a device, among others, that courts have developed to address and protect the often elusive boundary line between tort and contract law." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 19, 324 Cal. Rptr. 3d 433, 553 P.3d 1213 (2024). "The economic loss rule requires a contractual party to recover in contract for purely economic loss due to disappointed expectations, unless the party can demonstrate harm above and beyond a broken contractual promise." *Pac-12 Conference v. Mt. W.*

*Conference*, No. 24-cv-06685-SVK, 2026 U.S. Dist. LEXIS 66680 at *13 (N.D. Cal. Mar. 27, 2026) (quoting *Rattagan*, 17 Cal. 5th at 20).

The *Pac-12* case quoted *Rattagan* for its observation that "most fraudulent concealment allegations stem from precontractual negotiations" and "are ultimately presented as causes of action for fraudulent inducement or promissory fraud." *Id.* at 13; *Rattagan*, 17 Cal. 5th at 41. In *Pac-12*, the claim for fraudulent omissions was not a fraudulent inducement claim, but a claim for post-contract refusal to honor the terms.

Here, as in *Pac-12*, the Court is not facing an ordinary claim for fraud by omission. The claim here is not, and cannot, be couched as a claim for fraudulent inducement into the contract because the oral agreement is alleged to have existed before the alleged misrepresentations and omissions. Compare Dkt. 60 at ¶ 66 (alleging oral agreement entered into in July 2022) to dkt. 60 at ¶ 218 (alleging that the misrepresentations and omissions were made by the individual Defendants "while acting as the authorized agents for the Puffer Defendants in California"). The Puffer Defendants indisputably did not exist in July 2022, meaning the alleged misrepresentations and omissions must have been made at some time later when Mr. Forouzani and Mr. Vranek were "authorized agents for the Puffer Defendants."

In *Pac-12*, the alleged fraud at issue was a promise to honor the contract: "the MWC concedes in its opposition that the fraud it alleges is Pac-12's "promise[] to honor a key provision" of the Scheduling Agreement, *i.e.*, the termination fees." *Pac-12*, 2026 U.S. Dist. LEXIS 66680 at *15. The *Pac-12* court pointed to *Pattern Design LLC v. We Are Sechey Inc.*, No. 24-cv-02604-CRB, 2024 U.S. Dist. LEXIS 178761 at *7 (N.D. Cal. Oct. 1, 2024), which collects cases holding that promises to adhere to a contract "cannot form the basis of a separate fraud claim" under the economic loss rule. *Id.* The plaintiff argued that "the alleged intentional deceit, i.e., the Pac-12's alleged 'contemporaneous, pre-contract plan and follow-through' to poach the MWC's member schools, is what separates this case from cases like *Pattern Design*." *Id.* at *15-16.

The *Pac-12* court disagreed, pointing out that allowing fraud claims based on an intentional breach of a contract would collapse the distinction between tort and breach of contract. *Id.* at *16. As one of the cases it cited held:

> Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations. Businesses should not have to worry that simple disputes about bills and contract performance will routinely lead to the threat of punitive damages. To allow tort claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law.

*Oracle USA, Inc. v. XL Glob. Servs.*, No. C 09-00537 MHP, 2009 U.S. Dist. LEXIS 59999 at *21 (N.D. Cal. July 13, 2009).

Other courts have agreed with *Pac-12*. *See Overhill Farms, Inc. v. Wicked Foods, Inc.*, No. 2:25-cv-05178-SK, 2025 U.S. Dist. LEXIS 211768 at *7-8 (C.D. Cal. Oct. 6, 2025) ("Here, none of the complaint's factual allegations plausibly suggests that Plaintiff was harmed by any misconduct other than pure economic losses caused by Defendants' failure to pay invoices and to perform their contractual duties."); *Myo Aung v. Watts*, No. 2:24-cv-05501-SVW-AGR, 2024 U.S. Dist. LEXIS 237088 at *29 (C.D. Cal. Oct. 25, 2024) ("In this case, Plaintiff's fraud claims are the same as the fraud claims in *JMP Securities* and *Oracle*. Like the plaintiffs in those cases, Plaintiff's fraud claim is based on the theory that Defendant had no intention of honoring its agreement to release its third-party subrogation rights…. Just as those courts found Plaintiff's fraud claims barred by the economic loss rule, the Court will do the same here."); *Veasna Chan Hun v. Hajjar*, No. CV 18-10330 PSG (KSx), 2019 U.S. Dist. LEXIS 163225 at *20 (C.D. Cal. May 30, 2019) ("The economic loss rule has commonly been applied to bar tort claims based on promissory fraud; that is, claims that the defendant never intended to perform his contractual obligations when he entered into a contract.").

Lall has overhauled his causes of action—but in doing so, has now alleged for the first time that there was an oral contract governing all of this. By changing his causes of action and his pleadings, he has now created an economic loss rule issue for himself. He

cannot have it both ways and "collapse the carefully-guarded distinction between contract and tort law." His fraud claim, which is at its heart a claim that the Defendants did not intend to perform under the newly-identified oral contract, should thus be dismissed.

**G. Plaintiff's Declaratory Judgment / Constructive Trust Claim (Ninth Cause of Action) Should Be Dismissed**

The Ninth Cause of Action seeks a declaratory judgment that the three separately incorporated Puffer Entities—none of which have any legal relationship to the Portal Entities—are alter egos of the Portal Entities. As an initial matter, because all of Lall's other claims fail, he cannot assert a claim for declaratory relief. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists."). Even if the other claims were viable (they are not), the claim still fails for one overriding reason: Lall does not—and cannot—allege any control relationship between the Portal and Puffer Entities. Instead, Lall asks the Court to impose "horizontal" veil-piercing between entities who allegedly share a common owner (i.e., the Individual Defendants), but have no direct legal relationship or ability to control one another. Delaware does not support this theory. Nor does English law, which governs Lall's claims against the Puffer Foundation and Puffer Ltd.[3]

**1. Lall Fails to Allege Alter Ego Liability Against Puffer Corp.**

Under Delaware law, "[v]eil piercing is a tough thing to plead and a tougher thing to get, and for good reason," as "Delaware is in the business of forming entities." *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022). Accordingly, "Delaware law presumes respect for the corporate form."

[3] Under California's choice of law rules, courts apply the law of the state of incorporation to alter ego claims because that state has a "substantial interest in determining whether to pierce the corporate veil of one of its corporations." *Leitner v. Sadhana Temple of N.Y., Inc.,* No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479 at *48-49 (C.D. Cal. Oct. 17, 2014). Accordingly, Delaware law governs alter ego claims regarding Puffer Corp. (Dkt. 60 at ¶ 24), British Virgin Islands law governs claims regarding Puffer Ltd. (*id.* at ¶ 25), and Cayman Islands law governs claims regarding Puffer Foundation (*id.* at ¶ 26). "The Cayman Islands and the British Virgin Islands apply English common law to analyze corporate veil piercing." *Glob. Gaming Phil., LLC v. Razon*, 2022 U.S. Dist. LEXIS 50244 at *18 (S.D.N.Y. Mar. 21, 2022).

*Gracey v. Albawardi*, No. 2024-0394-LWW, 2024 Del. Ch. LEXIS 383 at *8 (Del. Ch. Dec. 13, 2024) (quoting *Nieves v. Insight Bldg. Co.*, 2020 Del. Ch. LEXIS 256 at *8 (Del. Ch. Aug. 4, 2020)). To state a veil-piercing claim under Delaware law, the plaintiff must allege: (i) "complete domination and control" between the applicable entities, and (ii) that "the corporate structure cause[s] fraud or similar injustice." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) (citations and internal quotation marks omitted). Lall comes nowhere close to meeting that standard with respect to the Portal Entities and Puffer Corp. Critically, Lall does not allege any legal relationship between the Portal Entities and Puffer Corp.—the only claimed connection is that the Individual Defendants allegedly owned or managed all of the companies. *E.g.,* dkt. 60 at ¶¶ 24-26. Thus, imposing alter-ego liability between the Portal Entities and Puffer Corp. would require "horizontal veil piercing"—i.e., piercing the veils of sister entities that have no ownership interest in each other. But Delaware law does not allow such a claim, as "[h]orizontal veil piercing has 'not been adopted in Delaware.'" *Empower Brands LLC v. Tristar Prods., Inc.*, Civil Action No. 23-01225-RGA, 2024 U.S. Dist. LEXIS 225561 at *9 (D. Del. Dec. 12, 2024) (quoting *Cleveland-Cliffs Burns Harbor Llc v. Boomerang Tube, LLC*, 2023 Del. Ch. LEXIS 359 at *15 (Del. Ch. Sept. 5, 2023)). And rightfully so. Veil-piercing requires establishing "exclusive domination and control to the point that [the entity] no longer has legal or independent significance of its own." *Wallace*, 752 A.2d at 1184 (citations, quotation marks, and alterations omitted). Because alleged sister companies like Puffer Corp. and the Portal Entities have no direct ownership relationship, they "are unable to exercise control over each other," which "precludes application of the veil piercing doctrine." 1 FLETCHER CYCLOPEDIA L. CORP. § 43.7.[4] In seeking to horizontally pierce the veil between the Portal Entities and Puffer Corp., Lall asks this Court to extend Delaware alter ego law into new territory. The Court should decline the

[4] Delaware courts routinely cite Fletcher's Cyclopedia of the Law of Corporations for corporate law principles. *See, e.g., Boomerang Tube, LLC*, 2023 Del. Ch. LEXIS 359, at *15 n.94; *Cohen v. State ex rel. Stewart*, 89 A.3d 65, 95 n.130 (Del. 2014); *Metro Storage International LLC v. Harron*, 275 A.3d 810, 869 (Del. Ch. 2022); *Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699-JRS, 2018 Del. Ch. LEXIS 530 at *10 n.44 (Del. Ch. Nov. 13, 2018).

invitation. *See, e.g., SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 696 (D. Ariz. 2022) ("[T]his Court is not free to expand the existing scope of state law without clear guidance from the state's highest court.") (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008)).

Even if Delaware law permitted horizontal veil-piercing (it does not), Lall's claim still fails because he cannot satisfy the "traditional veil-piercing" framework. *See Boomerang Tube, LLC*, 2023 Del. Ch. LEXIS 359, at *15. Under that framework, the plaintiff must establish that the corporation is a "sham" that "exist[s] for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1884. As part of that inquiry, Delaware courts consider: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Boomerang Tube, LLC*, 2023 Del. Ch. LEXIS 359, at *11 (quoting *Manichaean Cap., LLC v. Exela Technologies, Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021)). That framework does not support alter ego liability between Puffer Corp. and the Portal Entities. With respect to Puffer Corp., Lall alleges no facts supporting any of the five factors, and, with respect to the Portal Entities, he does not allege that the companies failed to follow corporate formalities or that they were insolvent or inadequately capitalized while they were in operation. Although the Complaint pleads that the Individual Defendants removed funds from Portal accounts (Dkt. 60 at ¶ 71), those allegations are irrelevant, because Lall does not plead that Puffer Corp.—the entity whose veil Lall seeks to pierce—removed any funds. And while Lall alleges that he received two payments from a Puffer account after his employment at Portal ended, he also alleges that the payments were made in error and that Defendants "insisted Lall repay them." *Id.* at ¶ 113. That shows adherence to corporate formalities—not abuse of them. Lall suggests that the Puffer Entities were a façade for the Portal Entities because the companies were allegedly owned and controlled by the Individual Defendants, used allegedly similar marketing, and were perceived by the marketplace as related businesses

(*see, e.g., id.* at ¶¶ 129-32). None of those allegations support veil piercing against Puffer Corp. *See, e.g., Skouras v. Admiralty Enterprise, Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978) ("[C]ommon central management alone is not a proper basis for disregarding a separate corporate existence."); *RSL COM Primecall, Inc. v. Beckoff (In re RSL COM Primecall, Inc.)*, Nos. 01-11457, 01-11469 (ALG), 03-2176 (ALG), 2003 Bankr. LEXIS 1635 at *53 (Bankr. S.D.N.Y. Dec. 11, 2003) ("extensive overlapping officers and directors" does not establish that company "was a mere sham"); *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 U.S. Dist. LEXIS 100560 at *3 (N.D. Cal. July 30, 2015) (rejecting alter ego theory based on claim that companies "hold themselves out to the public as being one and the same entity"); *Energy Marine Servs. v. DB Mobility Logistics AG*, Civil Action No. 15-24-GMS, 2016 U.S. Dist. LEXIS 7406 at *8 (D. Del. Jan. 22, 2016) ("Common branding, trademarks, and shared internet domains . . . do not necessarily suggest an alter-ego relationship.").

Finally, Lall's alter ego claim against Portal Corp. fails because he has not alleged that the use of "the corporate structure cause[s] fraud or similar injustice." *Wallace*, 752 A.2d at 1184. The only fraud or injustice alleged in the veil-piercing claim is that "the Individual Defendants have cut Lall out of his ownership stake" and "unlawfully diverted [assets] to the Puffer Entities." Compl. ¶¶ 10, 227. But those allegations merely duplicate Lall's other claims against the Defendants and, as a result, cannot support veil-piercing. *See, e.g., Boomerang Tube, LLC*, 2023 Del. Ch. LEXIS 359, at *14 (plaintiff's fraudulent transfer allegations did not satisfy the "fraud or injustice" requirement, which must "come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim") (citations and internal quotation marks omitted).

**2. Lall Fails to Allege Alter Ego Liability Against Puffer Ltd. and Puffer Foundation**

The same defects doom Lall's veil-piercing claims against Puffer Ltd. and Puffer Foundation, which are governed by English law. *Glob. Gaming Phil., LLC v. Razon*, 2022 U.S. Dist. LEXIS 50244 at *18. Veil-piercing is "quite rare" under English law, which,

like Delaware law, requires establishing "control of the company by the wrongdoer(s)." *In re Tyson*, 433 B.R. 68, 86-87 (S.D.N.Y. 2010) (citing the English case of *Hashem*, [2008] EWHC 2380); *see also Sunnyside Dev. Co. v. Opsys Ltd.*, No. C 05-0553 MHP, 2005 U.S. Dist. LEXIS 39303 at *10 (N.D. Cal. Aug. 8, 2005) (in the parent/subsidiary context, veil-piercing "under British law generally requires that the parent exercise a significant degree of control over the subsidiary, going beyond mere formal ownership and coordination of strategies and extending to the direct supervision of the subsidiary's day to-day business activities"). As with Puffer Corp., Lall fails to allege any relationship of ownership or control between the Portal Entities and Puffer Ltd. or the Puffer Foundation. That is fatal to the alter ego claim against both entities, as English law provides "no support . . . for the proposition that parties who are legally unrelated to a corporate entity may be held responsible for that entity's liabilities, at least in the absence of specific statutory authority." *Tyson*, 433 B.R. at 93.

**3. Lall Fails to Allege Entitlement to a Constructive Trust**

Lall's Ninth cause of action also seeks the imposition of a constructive trust on "one-third of the Puffer Entities' assets." Dkt. 60 at ¶¶ 224-227. That purported "claim" is not viable because, "under Delaware law, a constructive trust is a remedy, not a substantive cause of action." *VTB Bank v. Navitron Projects Corp.*, No. 8514-VCN, 2014 Del. Ch. LEXIS 61 at *20-21 (Del. Ch. Apr. 28, 2014); *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) (a constructive trust "is viewed as 'a remedial [and] not a substantive' institution") (quoting *McMahon v. New Castle Associates*, 532 A.2d 601, 608 (Del. Ch. 1987)); *In re JMO Wind Down, Inc.*, No. 16-10682 (BLS), 2018 Bankr. LEXIS 1126 at *23 n.16 (Bankr. D. Del. Apr. 13, 2018) (same).

In any event, the Complaint fails to allege any facts that would justify a constructive trust on the Puffer Entities' assets. Under Delaware law, a constructive trust may only be imposed upon (i) "specific property [or] identifiable proceeds of specific property," that (ii) "resides in an identifiable fund to which the plaintiff can trace equitable ownership." *Parseghian ex rel. Parseghian v. Frequency Therapeutics, Inc.*, No. 2021-0551-PAF, 2022

Del. Ch. LEXIS 142 at *24 (Del. Ch. June 21, 2022). Lall fails to satisfy those requirements. Lall seeks an indiscriminate trust over one third of all of the Puffer Entities' assets, without any regard to the provenance of those assets or Lall's equitable rights to them. That is, at bottom, a claim for money damages. Because Lall is "not seeking restoration of title to specific property or identifiable proceeds of specific property," *id.* at *25, the remedy of a constructive trust is not available. English law compels the same result for the same reasons. To establish entitlement to a constructive trust under English law, the plaintiff must show "the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff." *In re Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Nos. Chapter 15, 10-13164 (SMB), 10-03496 (SMB), 2021 Bankr. LEXIS 405 at *9 (Bankr. S.D.N.Y. Feb. 23, 2021), rev'd in part on other grounds, 147 F.4th 136 (2d Cir. 2025). Because Lall fails to plead entitlement to a constructive trust, the Ninth Cause of Action should be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

DATED: May 1, 2026

**KNEUPPER & COVEY, PC**

/s/Kevin M. Kneupper

Kevin M. Kneupper, Esq.

*Attorney for Defendants Amirhossein Forouzani, Jason Andrew Vranek, Puffer Labs Corp., Puffer Foundation, and Puffer Staking Limited.*