MICHAEL MIX (*pro hac vice*)
mmix@morrisoncohen.com
JASON P. GOTTLIEB (*pro hac vice*)
jgottlieb@morrisoncohen.com
WILLIAM ROTH (*pro hac vice*)
wroth@morrisoncohen.com
MORRISON COHEN LLP
909 Third Avenue, 27th Floor
New York, NY 10022
Telephone: (212) 735-8747

ELLEN LONDON (Cal. Bar No. 325580)
elondon@londonnaor.com
MICHAEL LUNDHOLM (Cal. Bar No. 336151)
mlundholm@londonnaor.com
LONDON & NAOR P.C.
1999 Harrison Street, Suite 2010
Oakland, CA 94612
Telephone: (415) 862-8485
Facsimile: (415) 862-8487

Attorneys for Plaintiff
VISHAL LALL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISHAL LALL, individually, and derivatively on behalf of Nominal Defendant PORTAL ORACLE CORP.<br><br>Plaintiff,<br><br>v.<br><br>AMIRHOSSEIN FOROUZANI, JASON VRANEK, PUFFER LABS CORP., PUFFER FOUNDATION, PUFFER STAKING LIMITED<br><br>Defendants, and<br><br>PORTAL ORACLE CORP.<br><br>Nominal Defendant, | Case No. 25-cv-04948-EMC<br><br>**PLAINTIFF VISHAL LALL'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**Hearing Date and Time:**<br>**July 9, 2026 at 1:30 p.m.** |

**TABLE OF CONTENTS**

**Page(s)**


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

A. Lall and the Individual Defendants Co-Found Portal in 2022 ..... 3

B. Lall and the Individual Defendants Incorporate the Portal Entities and Agree to an Equal Allocation of Both Equity and Tokens ..... 4

C. Portal Pivots to Create an Anti-Slashing Liquid Staking Protocol on Ethereum ..... 6

D. The Individual Defendants Cut Lall Out of Portal, and Rebrand and Launch Puffer Finance with the Same Corporate Assets, Business Model, and Personnel ..... 7

E. Procedural History ..... 9

F. Lall's Claims Against Defendants ..... 10

ARGUMENT ..... 11

I. LALL'S TOKENS-RELATED CLAIMS ARE TIMELY AND SUFFICIENTLY ALLEGED ..... 11

A. Lall's First Four Claims Accrued in October 2024, When the Individual Defendants Failed to Perform and Stood to Benefit ..... 11

1. The Individual Defendants Never Repudiated the Founders' Token Agreement, and Repudiation Does Not Accelerate the Statute of Limitations ..... 12

2. Defendants' "Injury" Argument Is Based on Inapplicable Tort Law ..... 14

3. The Relation Back Doctrine Moots Defendants' Timeliness Arguments ..... 15

B. Lall's Third Claim for Quantum Meruit is Sufficiently Alleged ..... 16

C. Lall's Fourth Claim for Unjust Enrichment is Sufficiently Alleged ..... 17

II.LALL'S BREACH OF FIDUCIARY DUTY CLAIMS ARE SUFFICIENTLY ALLEGED ..... 17

1. The Amended Complaint Sufficiently Alleges a Derivative Breach of Fiduciary Duty ..... 18

2. The Complaint Sufficiently Alleges a Direct Breach of Fiduciary Duty ..... 19

III. LALL'S UNJUST ENRICHMENT CLAIM AGAINST ALL DEFENDANTS IS SUFFICIENTLY ALLEGED ..... 21

IV. LALL'S FRAUD CLAIM IS SUFFICIENTLY ALLEGED ..... 22

1. The Amended Complaint Alleges Lall's Justified Reliance ..... 23

2. The Economic Loss Rule is Inapplicable to Lall's Fraud Claim ..... 23

V. LALL'S CLAIM FOR DECLARATORY JUDGMENT AND A CONSTRUCTIVE TRUST IS SUFFICIENTLY ALLEGED ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**STATE CASES**

*In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025 (Del. Ch. 2015)....................18

*Beard Rsch., Inc. v. Kates*, 8 A.3d 573 (Del. Ch. 2010)....................17

*Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148 (Del. 1996)....................19

*Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000)....................25

*Delman v. GigAcquisitions3, LLC*, 288 A.3d 692 (Del. Ch. 2023)....................17

*Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001)....................17

*Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308 (Del. Ch. Apr. 14, 2017)....................21

*Gold Strike Heights Homeowners Ass'n v. Fin. Pac. Ins. Co.*, 2012 WL 2866688 (Cal. Ct. App. July 13, 2012)....................12

*Goldstein v. Denner*, 2022 WL 1797224 (Del. Ch. June 2, 2022)....................20, 21

*Jewish Funeral Ass'n, LLC v. Hollywood Forever, Inc.*, 2016 WL 215868 (Cal. Ct. App. Jan. 19, 2016)....................13

*Jogani v. Superior Ct.*, 165 Cal. App. 4th 901 (2008)....................16

*In re KKR Fin. Holdings. LLC S'holder Litig.*, 101 A.3d 980 (Del. Ch. 2014)....................18

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001)....................22

*McCaskey v. California State Auto. Assn.*, 189 Cal. App. 4th 947 (2010)....................13

*Mulchin v. ZZZ Anesthesia, Inc.*, 2006 WL 3114306 (Ohio App. Nov. 3, 2006)....................21

*In re MultiPlan Corp. S'holders Litig.*,
268 A.3d 784 (Del. Ch. 2022)....21

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ....21

*Parker v. Walker*,
5 Cal. App. 4th 1173 (1992) ....14

*Rattagan v. Uber Techs., Inc.*,
17 Cal. 5th 1 (2024) ....23

*Romano v. Rockwell Int'l*,
14 Cal.4th 479 (1996) ....12

*Rosenthal v. Bella + Canvas, LLC*,
2025 WL 98198 (Cal. Ct. App. Jan. 14, 2025) ....13

*Spellis v. Lawn*,
200 Cal. App. 3d 1075 (1988) ....15

*Taylor v. Johnston*,
15 Cal. 3d 130 (1975) ....12

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ....18, 20

*U.S. W., Inc. v. Time Warner Inc.*,
1996 WL 307445 (Del. Ch. June 6, 1996)....18, 19

*Viau v. Viau*,
57 Cal. App. 66 (1922) ....14

**FEDERAL CASES**

*ABC Servs. Grp. v. Health Net of Cal., Inc.*,
2020 WL 4668142 (C.D. Cal. Aug. 3, 2020)....16

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) ....15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....11, 21

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
No. 15 CV 9003-LTS-SN, 2016 WL 5719793 (S.D.N.Y. Sept. 30, 2016) ....24

*In re Green Energy Servs., Inc.*,
610 B.R. 760 (D. Del. 2019)....25

*Julian v. TTE Tech., Inc.*,
2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ....................22

*King v. Nat'l. Gen. Ins. Co.*,
2025 WL 2494366 (N.D. Cal. Aug. 29, 2025) ....................22

*Line One Lab'ys Inc. v. Wingpow Intl. Ltd.*,
2023 WL 6812760 (C.D. Cal Sept. 12, 2023) ....................25

*Manley v. M.A.C. Cosmetics Inc.*,
2026 WL 184588 (C.D. Cal. Jan. 16, 2026) ....................14

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) ....................21

*Monroe v. FTS USA, LLC*,
2026 WL 622263 (D. Del. Mar. 5, 2026) ....................25

*Nacarino v. Chobani, LLC*,
668 F. Supp. 3d 881 (N.D. Cal. 2022) ....................22

*Natomas Gardens Inv. Group LLC v. Sinadinos*,
2009 WL 1363382 (E.D. Cal. May 12, 2009) ....................20

*Nodine v. Shiley Inc.*,
240 F.3d 1149,1153-54 (9th Cir. 2001) ....................15

*Polius v. Clark Equip. Co.*,
802 F.2d 75 (3d Cir. 1986)....................24

*Qun v. Karstetter*,
2014 WL 12461260 (S.D. Cal. Sept. 24, 2014)....................24

*In re Sagent Tech., Inc., Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) ....................17

*Summit Est., Inc. v. Cigna Healthcare of California, Inc.*,
2017 WL 4517111 (N.D. Cal. Oct. 10, 2017)....................16

*In re Tyson*,
433 B.R. 68 (S.D.N.Y. 2010)....................24

*Van Steenwyk v. Van Steenwyk*,
2021 WL 4815212 (C.D. Cal. Mar. 23, 2021) ....................18

*Viramontes v. Pfizer, Inc.*,
2018 U.S. Dist. LEXIS 114646 (E.D. Cal. July 9, 2018) ....................15

*Wilkins-Jones v. Cnty. of Alameda*,
2012 WL 3116025 (N.D. Cal. July 31, 2012)....................15

**STATUTES & RULES**

Cal. Corp. Code § 2116 .......... 17

**OTHER AUTHORITIES**

15 W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 7122 (Perm.Ed.1983) .......... 24

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3), this motion raises the following issues:

1. Is Lall's breach of contract claim time-barred?
2. Is Lall's covenant of good faith and fair dealing claim time-barred?
3. Is Lall's quantum meruit claim time-barred?
4. Does Lall state a claim for quantum meruit?
5. Does Lall state a claim for unjust enrichment against the Individual Defendants?
6. Does Lall state a claim for unjust enrichment against all Defendants?
7. Does Lall state a derivative claim for breach of fiduciary duty?
8. Does Lall state a direct claim for breach of fiduciary duty?
9. Does Lall state a claim for fraud?
10. Does Lall state a claim for declaratory judgment of successor liability and for the imposition of the constructive trust?

Plaintiff Vishal Lall ("Lall") respectfully submits this opposition to Defendants' motion (Dkt. No. 66, the "Motion" or the "Mot."), pursuant to Rule 12(b)(6), to dismiss Lall's Verified Direct and Derivative Action Amended Complaint (Dkt. No. 60, the "Amended Complaint" or the "AC"), filed by Defendants Amirhossein Forouzani ("Forouzani"), Jason Andrew Vranek ("Vranek," and together with Forouzani, the "Individual Defendants"), Puffer Labs Corp., Puffer Foundation, and Puffer Staking Limited (and together with Puffer Labs Corp. and Puffer Foundation, the "Puffer Defendants") (the Individual Defendants and the Puffer Defendants collectively, "Defendants").

## PRELIMINARY STATEMENT

Lall brought this action to vindicate his own rights, as well as the rights of Portal Oracle Corp. ("Portal Oracle"), the successful startup company Defendants Forouzani and Vranek co-founded with Lall, and which the Individual Defendants subsequently left for dead, siphoning all of Portal Oracle's assets and corporate opportunities into their "new" Puffer Finance venture after Lall raised well-grounded concerns about Forouzani's romantic partner's increasing role at Portal Oracle.

As discovery completed to date has confirmed, after the Individual Defendants could not strong-arm Lall into accepting a lowball offer for his rights, they surreptitiously replicated the Portal Entities as the Puffer Defendants. In the process, Defendants misappropriated and otherwise transferred <u>all</u> of the Portal Entities' assets – cash, digital assets, intellectual property, and all relevant relationships and accounts – without paying any consideration. Of course, in the process, Defendants also injured Portal Oracle itself, leaving the company with no assets and hundreds of thousands of tax debt. Defendants now admit they did all this for the sole purpose of cutting Lall out.

Consistent with those parallel injuries, and in line with this Court's prior preliminary guidance, the Amended Complaint brings a few discrete categories of claims, delineating how Defendants have, on one hand, targeted and injured Lall personally, and on the other hand, harmed Portal Oracle as a corporation. First, Lall alleges four claims, pleaded in the alternative, focused solely on the Individual Defendants unlawful withholding of Lall's project tokens. These claims inarguably belong to Lall personally. Second, and because the discovery to date has borne out Lall's theory that the Individual Defendants took certain steps to cause Lall singular harm, Lall asserts both derivative and direct breach of fiduciary duty claims. Third, Lall brings a direct unjust enrichment

claim against all Defendants including the Offshore Puffer Defendants. This claim is currently the only feasible vehicle Lall has to recover against the corporate defendants for their oppression of Lall. Fourth, and in light of the Individual Defendants' misrepresentations and omissions, Lall has added a fraud claim against them. Fifth, and finally, Lall seeks a declaratory judgment that the Puffer Defendants are successors (i.e. "mere continuations") of the Portal Entities, and the imposition of a constructive trust that can allow for a proper pro rata remedy for Lall's claims.

For these reasons and all that follow, Defendants' Motion should be denied.

First, Lall's first four claims, which are pleaded in the alternative and relate to the Individual Defendants' unlawful withholding of Lall's tokens, are all timely and sufficiently alleged. Defendants' only argument as to Lall's breach of contract and good faith and fair dealing claims is that they are barred by two-year statutes of limitations. But the Individual Defendants could only break their promises when it came time to perform in October 2024, when the tokens were issued, and the Amended Complaint was filed less than two years after that. Moreover, even if Lall's claims somehow accrued when the Individual Defendants (without telling Lall) dissolved Portal B.V.I. in September 2023, Lall's claims plainly relate back to his initial Complaint, filed in June 2025 (less than two years later). And if the Court construes Lall's token-based claim to be more appropriately alleged as a quantum meruit or unjust enrichment claim, those are also sufficiently alleged.

Second, due to the nature of Lall's injuries as a minority shareholder in Portal Oracle, Lall's derivative and direct breach of fiduciary duty claims are sufficiently alleged. The Amended Complaint pleads in detail how Defendants' misconduct harmed Portal Oracle, which was their domestic operating business, and then usurped Portal Oracle's assets and opportunities. That Defendants also harmed the related offshore Portal Entities does not undermine this claim.

The Amended Complaint also supports Lall's direct claim for breach of fiduciary duty, which Lall acknowledges is rare. But everything about the Individual Defendants' scheme was designed to hurt Lall, and Lall's injuries have hardly prevented the Individual Defendants, their successor companies, and their partners from benefiting at Lall's sole expense. Lall's direct claim thus gives the Court a means to achieve an equitable pro rata recovery.

Third, the Amended Complaint describes in detail how the Offshore Puffer Defendants, as mere continuations of the Portal Entities, have been enriched at Lall's expense. Accordingly, Lall's direct claim for unjust enrichment is the sole viable means for this Court to ensure that Defendants' do not avoid accountability by virtue of their own strategic gamesmanship.

Fourth, Lall's fraud claim follows from the core premise of this litigation – the Individual Defendants surreptitiously duplicated the Portal Entities for the admitted purpose of cutting Lall – the sole innocent Portal Founder – out of their business, unlawfully denying his right to not only enjoy the economic benefits of his equity, but to participate as an equal shareholder and partner.

Fifth, and in light of the above, Lall's final claim for a declaratory judgment that the Puffer Defendants are successors of the Portal Entities and for the imposition of a constructive trust is adequately alleged. Successor liability is an exception to the default rule; but where, as here, parties are alleged to be mere continuities of their predecessors, it is not only appropriate but necessary. In every respect, the Individual Defendants have owned, managed, and operated the Puffer Defendants as "rebranded" versions of the Portal Entities, with no material distinction beyond Lall's expulsion. Finally, a constructive trust is a remedy that is not ripe for dismissal at this stage.

## STATEMENT OF FACTS

### A. Lall and the Individual Defendants Co-Found Portal in 2022

Lall, Forouzani, and Vranek (the "Portal Founders") began working on the Portal blockchain protocol in February 2022, when Lall worked with Forouzani at NASA, and Vranek was a graduate student in Santa Cruz. AC ¶¶ 33–35. The Portal Founders lived and worked in California. *Id.* ¶ 35.

Initially, the Portal Founders focused on building cutting-edge blockchain products that incorporated privacy-enhancing technology called Trusted Execution Environments (TEEs). After working on the code base and intellectual property that would undergird Portal's technology, the Portal Founders first publicly exhibited their collective work at the EthDenver Hackathon. *Id.* ¶¶ 36–41. There, the Portal Founders earned attention from blockchain leaders, including Justin Brill and Rahul Maganti of Jump Crypto, who subsequently invested in Portal's platform. *Id.* ¶ 40.

Shortly after EthDenver, the Portal Founders began referring to their project as "Portal" and organized their work on private servers and chats. *See, e.g.*, *id.* ¶ 42–44. Lall contributed to Portal's

products in myriad ways, including software development, web page design, market research, and investor relations. *Id.* ¶ 43. Lall even spent his own money to hire vendors to help build Portal's web presence. *Id.* The Portal Founders also began soliciting investments. Portal's pitch decks prominently featured Lall as an equal co-founder, alongside Forouzani and Vranek. *Id.* ¶ 44.

Behind the scenes, a fourth individual was beginning to play a larger role. Forouzani had met Christina Chen, a blockchain marketing professional, on the final night of EthDenver, when he began a romantic relationship with her. *Id.* ¶ 41. Chen soon began acting as an unofficial liaison between the Portal Founders and blockchain investors in her network. *Id.* ¶ 45. Forouzani occasionally even flew abroad with Chen, such as when he visited Dubai in March 2022 to meet with, among other individuals, James McDowell at Arcanum Capital. *Id.* ¶ 46. Chen also introduced the Portal Founders to David Ri Sun, who would serve as an accountant and corporate representative for the soon-to-be incorporated Portal Entities. *Id.* ¶ 45.

Next, Lall and Vranek published Portal's whitepaper, on which Lall is named as a co-author. *Id.* ¶ 47. The buzz around Portal grew, and the Portal Founders met prospective investors, including leaders at Arcanum Capital, IoTeX, LBank Labs, DoraHacks, Lightspeed Ventures, Binance Labs, BlueRun Ventures, Fenbushi Capital, Pillar VC, Binance.US, and Sequoia Capital. *Id.* ¶ 49–53, 58.

In May 2022, Arcanum Capital became the Portal platform's first outside investor, investing $250,000 in exchange for the company's soon-to-be issued digital asset token, for which Arcanum ascribed potential value of at least $50 million. *Id.* ¶ 53–55. The Portal Founders held the exclusive private keys to the digital asset wallet that included Arcanum's investment. *Id.* ¶ 55.

Around the same time, the Portal Founders continued to formalize the operations of their startup. Lall, who Forouzani initially proposed to serve as Portal's CEO, was named Portal's Chief Product Officer. *Id.* ¶ 39. Portal also officially retained Chen and her former boss, Allan Zheng, as advisors, and promised them each a 0.6% share of Portal's future tokens. *Id.* ¶ 44.

**B. Lall and the Individual Defendants Incorporate the Portal Entities and Agree to an <u>Equal Allocation of Both Equity and Tokens</u>**

In July 2022, the Portal Founders incorporated three affiliated Portal companies to organize what had to that point operated in typical startup fashion. *Id.* ¶ 59. First, the Portal Founders founded a domestic operating company, Portal Oracle Corp. ("Portal Oracle"), a Delaware corporation based

in California. In addition to Portal, Lall, Forouzani, and Vranek also founded two offshore entities, Portal Oracle Limited, and the Portal Oracle Foundation (the "Offshore Portal Entities," and together with Portal, the "Portal Entities"), which they created for the discrete purposes of issuing Portal's digital asset tokens and performing certain treasury functions, respectively. *Id.* ¶¶ 60–61.

Portal Oracle was Portal's domestic operating business, through which the Portal Founders executed critical business functions. A services agreement purportedly executed by Forouzani on behalf of both Portal Oracle and the Portal Foundation set out that Portal Oracle was responsible for the development of the Portal platform's code base, related R&D, testing and deployment across relevant blockchains, HR (including paying the Portal Founders), negotiating with and formalizing relationships with key third parties, business development, investor relations, and banking and finance. *Id.* ¶ 64–65. In short, Portal Oracle was the operative cornerstone of the Portal platform. *Id.*

Lall and the Individual Defendants all held equal shares in Portal Oracle as well as equal control over its offshore affiliates, and agreed to share an equal allocation of the project's yet-to-be-issued cryptocurrency tokens. Specifically, and consistent with industry norms and standards, the Portal Founders agreed to reserve and allocate 20% of the token their project ultimately issued to an inner circle of the project team, at least half of which (10% of the total supply) would be split equally amongst themselves (i.e., each of them would receive <u>at least</u> 3.33% of the total token supply (the "Founders' Token Agreement"). *Id.* ¶ 66.

When the Portal Founders discussed Portal as a project or brand with third parties such as investors and partners, they did not delineate between the three Portal Entities, but instead referred to "Portal" as a single business which they ran. *Id.* ¶ 62. Similarly, outside investors and partners understood from these same discussions that the Portal Founders were building Portal's software and platform as agents of all three Portal Entities, including Portal Oracle in California. *Id.* ¶ 63.

Meanwhile, Chen's role caused increasing friction amongst the Portal Founders. In an episode that foreshadowed further internal conflict, Forouzani proposed elevating Chen to Chief Marketing Officer at Portal Oracle, but both Lall and Vranek objected. *Id.* ¶ 67.

Notwithstanding the tensions caused by Chen's role, the Portal project continued to grow throughout the Summer of 2022, raising approximately $650,000. The Portal Founders held these

funds in a digital assets wallet under their shared (and exclusive) control, and which they used to pay for Portal Oracle's day-to-day business costs (*i.e.*, the funds were not segregated or otherwise earmarked for use by the Offshore Portal Entities). *Id.* ¶ 68–70.

### C. <u>Portal Pivots to Create an Anti-Slashing Liquid Staking Protocol on Ethereum</u>

By October 2022, the Portal Founders started to pivot their core product from the initial compute oracle concept towards a slash-resistant staking protocol designed to work within the popular Ethereum ecosystem. *Id.* ¶ 72. Essentially, the Portal Founders aimed to allow users to stake their ETH (Ethereum's native cryptocurrency) more efficiently and more safely than they could on other available staking protocols. To that end, the Portal Founders met with prominent leaders in the Ethereum ecosystem, including Justin Drake, Josh Rudolf, and James Smith of the Ethereum Foundation, who told the Portal Founders that they believed the Ethereum Foundation could support Portal by funding a grant within 2–3 months (a grant which Defendants later usurped for themselves, operating as Puffer Finance). *Id.* ¶¶ 73–74.

The Portal Founders' continuing work was reflected in new versions of Portal's pitch decks, as well as Portal's Discord server discussions and Portal's GitHub repository, which highlighted Portal's "Secure-Signer" software. *Id.* ¶¶ 76–77. While the concept for Portal's platform had tacked course, the new iteration still incorporated much of the foundational code base and intellectual property that Lall, Forouzani, and Vranek had spent 2022 building. *Id.* And as with the previous iterations of Portal Oracle's products, Lall contributed to the slash-resistant technology by revamping the team's pitch materials, meeting with third-party designers, testing staking software, conducting product and market research, and designing the project's tokenomics (including the contours of the Founders' Token Agreement). *Id.* ¶¶ 77–79. Lall also worked with the Ethereum Foundation, one of Portal's most significant backers, to secure both the Ethereum grant and testnet tokens for the latest Portal platform. *Id.* ¶ 78. Lall spent over 1,000 hours on these activities alone.

In the wake of Portal's momentum, Forouzani again proposed formally elevating Chen to Chief Marketing Officer, and asked Lall and Vranek whether they would agree to giving Chen the new title along with an additional allocation of future Portal tokens. *Id.* ¶ 75. Lall objected, and Forouzani seemed to drop the subject. *Id.*

Around the same time, Lall, the Individual Defendants, and Chen discussed ways to market their project more broadly, including a new logo. *Id.* ¶ 81. On October 28, 2026, Forouzani suggested "our brand animal should be water animal," "something correlated with water." *Id.* Vranek then circulated a picture of a puffer fish, proposing that Portal adopt the animal as their mascot. *Id.* A few days later, Chen strongly suggested "to remain Portal brand name" because "[w]e have used that brand to talk to hundreds of investors for the past 8 months, as well as numerous partners. We also signed contracts with investors too. We have grown to love Portal. People all know Portal, that the brand awareness takes time to build. We only consider to change some designs in logo and the whole marketing theme." *Id.* ¶ 62. The team referred to this branding revamp as "Portal 2.0." *Id.*

The events that followed precipitated this lawsuit.

**D. The Individual Defendants Cut Lall Out of Portal, and Rebrand and Launch <u>Puffer Finance with the Same Corporate Assets, Business Model, and Personnel</u>**

In November 2022, the Individual Defendants blindsided Lall, summoning him to a meeting with no advanced notice, where they told Lall to step down from his positions at Portal as well as its offshore affiliated companies. *Id.* ¶ 84. Forouzani read a prepared statement, and represented that the Individual Defendants intended to compensate Lall for his Portal Oracle shares (and his Portal B.V.I. shares) by making a new offer of project tokens. Lall vigorously objected. *Id.* ¶ 85–86.

The Individual Defendants' next steps violated their fiduciary duties both to Portal itself, and to Lall (who retained his Portal Entity shares) individually. First, they lowballed Lall with unrealistic offers to extinguish Lall's rights and claims. *Id.* ¶ 86. Next, and notwithstanding the fact that Lall remained a director and officer of Portal Oracle and its affiliates, the Individual Defendants blocked Lall's access to Portal Oracle's books and records, including intellectual property he helped create. *Id.* ¶ 87. The Individual Defendants then – while still running the Portal Entities – purchased domains under the "Puffer Finance" name. *Id.* ¶ 88. The Individual Defendants then stripped Lall of his titles at the Portal Foundation and terminated his employment at Portal Oracle. *Id.* ¶ 89.

Two weeks later, the Individual Defendants moved to remove Lall as a Portal Oracle director. As reflected in Portal Oracle's board minutes, Lall objected, and argued the Individual Directors were impermissibly cutting Lall out in part because he reasonably disagreed with Forouzani's decision to integrate Chen further into Portal's business. *Id.* ¶ 90. Lall explained that the Individual Defendants

were violating their responsibilities to Portal Oracle and its shareholders by, among other actions, failing to disclose Forouzani and Chen's romantic relationship when soliciting investment. *Id*.

While the Individual Defendants took measures to strip Lall of his status as a director and employee of the three Portal Entities, the Individual Defendants never repudiated their obligations pursuant to which the Founders' Token Agreement, which still attached to any token launch by the Portal project regardless of Lall's forced departure as an employee and director in November 2022.

Next, and even though they had not yet taken any appropriate action to formally wind down or dissolve Portal Oracle or its offshore affiliates, the Individual Defendants accelerated their misappropriation of Portal Oracle's assets (and those of its affiliates). For example, the Individual Defendants: changed all public-facing Portal documents to reflect that they were continuing operations under a new name, Puffer Finance; created social media accounts under the Puffer Finance branding; renamed their enterprise software accounts under the Puffer Finance name; and, in public presentations (*e.g.*, at Columbia University), told audiences that they had changed their name from Portal to Puffer Finance. *Id*. ¶¶ 95–97, 99. All the while, the business, intellectual property, personnel, and ownership remained exactly the same. *Id*.

Indeed, communications produced in discovery from this same period – November 2022 through Winter 2023 – unambiguously establish that the Individual Defendants represented to their existing and prospective investors that "Puffer Finance" was merely a rebrand from "Portal," and that it was otherwise business as usual. *Id*. ¶¶ 115–130. And there was some truth to that; after all, these investors *had invested and expressed interest in Portal*, and maintained that investment and interest in "Puffer Finance," which was simply a continuation of the former under a new name.

Unsatisfied, however, with the fact that Lall remained a shareholder in their business, the Individual Defendants incorporated a new trio of entities. The organization and structure of these new companies perfectly duplicated the Portal Entities, except, of course, that they excluded Lall. *See id*. ¶ 101. In addition to incorporating Puffer Labs Corp. as their California-based operating company (mirroring Portal Oracle), the Individual Defendants also formed new B.V.I. and Cayman companies, called Puffer Staking Limited and the Puffer Foundation. *Id*. ¶¶ 98, 100. These latter two entities, like the offshore Portal Entities they mirrored, served discrete functions (i.e. holding certain

assets and issuing certain digital asset tokens), but as the Amended Complaint alleges, operated in tandem with the domestic corporation—Puffer Labs Corp.—to support Puffer Finance. *Id.* ¶¶ 92, 101.

To this day, Vranek and Chen's LinkedIn pages similarly reflect that they both worked at "Puffer Finance" beginning in February 2022 and May 2022 respectively, even though at those beginning dates, the company was operating as Portal. *Id.* ¶¶ 132–134.

Concurrent with Defendants' "rebranding" of Portal into Puffer Finance, Defendants transferred all of Portal's assets out of Portal's digital asset wallets and bank accounts into different accounts, over which Lall had no access or control. *Id.* ¶¶ 105–109, 117.

In sum and substance, Defendants operated Puffer Finance exactly as they had done before. To this day, Defendants have not compensated Lall for any of these actions, with one notable exception that underscores the complete continuity between Portal and Puffer: even after Defendants cut Lall out of their business, "Puffer Labs," the successor to Portal Oracle, accidentally paid Lall for two additional pay periods, even though Lall was never employed by any Puffer entity. *Id.* ¶ 113.

Consistent with Portal Oracle's own timeline, Defendants issued and began selling the Puffer token on October 14, 2024. The issuance of the Puffer token also marked the Individual Defendants' breach of the Founders' Token Agreement, since it was the first moment their performance was owed to Lall, and the first moment they stood to benefit from the same (i.e. receipt of the project tokens).

### E. Procedural History

Lall filed the initial Complaint on June 11, 2025. Dkt. No. 1. The Complaint included four causes of action: (1) a derivative breach of fiduciary duty claim; (2) a direct breach of fiduciary duty claim; (3) a derivative unjust enrichment claim against all Defendants; and (4) declaratory judgment seeking a declaration the Puffer Defendants are alter egos of the Portal Entities, and the imposition of a constructive trust to allow for an equitable remedy. On September 30, 2025, Defendants moved to dismiss the Complaint and to stay discovery. Dkt. Nos. 28–29. On October 14, 2025, the Court held an Initial Case Management Conference, at which the Court referred the matter to private mediation, to be completed by February 11, 2026, and ordered limited discovery to further the same.

On December 4, 2025, this Court held a hearing regarding Defendants' motions to dismiss and stay discovery. At that hearing, the Court raised questions concerning whether there was personal jurisdiction over the Offshore Puffer Defendants, and ultimately ordered limited jurisdictional discovery tailored to answer that question. The Court separately offered its preliminary guidance that while Lall's derivative breach of fiduciary duty appeared coherent, the Court was skeptical that Lall's direct breach of fiduciary duty claim alleged a cognizable cause of action because "Plaintiff likely has no free-standing stock redemption right." Dkt. No. 47 at 2. The Court further provided that with respect to Lall's fourth claim, it seemed that Lall's theory "implicates corporation and agency rules, not alter ego." *Id.*

On March 10, 2026, after private mediation failed to resolve the dispute, the Parties concluded jurisdictional discovery.

On April 3, 2026, Lall filed the Amended Complaint and an unredacted version under seal. *See* Dkt. Nos. 59–61. The Parties completed briefing concerning the Administrative Motion to Consider Whether Another Party's Material Should Be Sealed on April 14, 2026. *See* Dkt. Nos. 62–63.

**F. <u>Lall's Claims Against Defendants</u>**

Lall has found himself in the peculiar position of being the sole Portal shareholder who was also not personally involved in the bad acts described above. Even the limited discovery completed to date has confirmed Lall's worst suspicions regarding the Defendants' illegal mistreatment of Lall individually, as well as Portal Oracle. Accordingly, Lall has brought nine claims.

First, Lall has brought four personal contract, quasi-contract, and equitable claims relating to the Individual Defendants' breach of the Founders' Token Agreement. Second, Lall has brought a derivative breach of fiduciary duty claim on behalf of Portal Oracle. Third, and because the Individual Defendants sought to oppress Lall in a manner that went beyond mere harm to the company, Lall has brought a direct breach of fiduciary duty claim. Fourth, Lall has brought an unjust enrichment claim against all Defendants, including the Offshore Puffer Defendants, seeking redress for their unlawful windfall arising out of the misappropriation of the Portal Entities. Fifth, Lall has brought a fraud claim against the Individual Defendants, targeting their misrepresentations and omissions concerning their intentions as fiduciaries of the Portal Entities. Sixth, and finally, Lall seeks a declaratory

judgment that the Puffer Defendants are legal successors of the Portal Entities, and the imposition of a constructive trust on their assets for Lall's benefit.

## ARGUMENT

The Amended Complaint contains detailed facts sufficient to state each of its nine claims. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## I. LALL'S TOKENS-RELATED CLAIMS ARE TIMELY AND SUFFICIENTLY ALLEGED

Lall's first four claims concern the Individual Defendants' failure to provide Lall the tokens they promised him pursuant to the Founders' Token Agreement. The Amended Complaint alleges the Individual Defendants breached the Founders' Token Agreement when, upon issuance of their project tokens in October 2024 (the first opportunity to performance), they failed to provide Lall with his agreed-upon equal allocation.

The Individual Defendants do not attempt to argue that they were not bound by the Founders' Token Agreement, or that they performed their obligations to Lall thereunder. Instead, they primarily argue that Lall's first three claims (but <u>not</u> his fourth claim) are time-barred by their respective two-year statutes of limitations. Indeed, this is the Motion's <u>only</u> argument for dismissal of Lall's first two claims. Defendants also argue Lall's quantum meruit claim is barred because Forouzani and Vranek are not alleged to have requested Lall's services. Defendants next confusingly lump Lall's fourth unjust enrichment claim concerning his agreed-upon token allocation in with an entirely unrelated claim against all Defendants to argue that Lall is seeking duplicative relief.

Defendants' arguments as to Lall's first four claims misconstrue the law and misread the Amended Complaint's allegations. At best, Defendants have raised issues of fact.

### A. Lall's First Four Claims Accrued in October 2024, When the Individual Defendants Failed to Perform and Stood to Benefit

Roughly a third of Defendants' Motion is dedicated to arguing that Lall's first three claims related to the Founders' Token Agreement are barred by their respective two-year statutes of limitations. *See* Mot. at 2–6, 8. Defendants assert two related arguments: (1) that the Individual

Defendants repudiated the Token Founders' Agreement as early as November 2022, when they removed Lall from his positions at the Portal Entities, and that (2) the Individual Defendants' decisions to dissolve the Portal Entities and form the Puffer Defendants, culminating in the dissolution of Portal B.V.I. in September 2023 (which Lall does not allege he discovered at the time), "injured" Lall, triggering the two-year statutes of limitations under California law. Defendants are incorrect.

A statute of limitations begins to run when a claim is actionable. Lall's first four claims became actionable when it came time for the Individual Defendants to perform in October 2024, when they issued tokens and refused to an equal allocation to Lall, as they promised they would. *See Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975) ("There can be no Actual breach of a contract until the time specified therein for performance has arrived."); *Romano v. Rockwell Int'l*, 14 Cal.4th 479, 488 (1996) ("A cause of action for breach of contract does not accrue before the time of breach . . . There can be no *actual* breach of a contract until the time specified therein for performance has arrived."); *Gold Strike Heights Homeowners Ass'n v. Fin. Pac. Ins. Co.*, 2012 WL 2866688, at *4 (Cal. Ct. App. July 13, 2012) ("The corollary is that if no performance is due, there can be no liability for breach of an obligation."). And the Individual Defendants' secret dissolution of the Portal Entities and creation of the Puffer Defendants as mere continuations of the same could not have constituted a breach, especially since the Amended Complaint alleges the Individual Defendants did issue tokens in October 2024 (again, through Puffer B.V.I., as a mere continuation of Portal B.V.I.). AC ¶ 159 ("the Puffer token differs from the never-issued Portal Token in name only."). The October 2024 token issuance thus triggered the statute of limitations for Lall's first four timely claims.

1. The Individual Defendants Never Repudiated the Founders' Token Agreement, and Repudiation Does Not Accelerate the Statute of Limitations

Against this backdrop, Defendants' repudiation argument misses the mark. The California Supreme Court has explained that "[w]hen a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time." *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975). Thus, in the event that the plaintiff disregards the repudiation, the statute of

limitations does not begin to run until the time set by the contract for performance. *See Romano v. Rockwell International*, *Inc.*, 14 Cal. 4th 479, 489 (1996). Moreover, "where the parties did not mutually abandon or rescind [contractual obligation] upon a breach or successive breaches, the injured party c[an] wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches.'" *Id*. at 489–90. Courts follow these principles in the context of both written and oral agreements. *See, e.g.*, *Rosenthal v. Bella + Canvas, LLC*, 2025 WL 98198, at *14 (Cal. Ct. App. Jan. 14, 2025); *Jewish Funeral Ass'n, LLC v. Hollywood Forever, Inc.*, 2016 WL 215868, at *4 (Cal. Ct. App. Jan. 19, 2016). Accordingly, where repudiation occurs, "it does not accelerate the accrual of a cause of action for limitations purposes; the promisee remains entitled to wait until performance is due and the promisor has failed to perform, i.e., to do the thing promised." Quoting *McCaskey v. California State Auto. Assn.*, 189 Cal. App. 4th 947, 958 (2010).

The Amended Complaint <u>does not allege</u> that the Individual Defendants ever repudiated the Founders' Token Agreement prior to the Puffer token's issuance in October 2024. To the contrary, the Amended Complaint alleges that when the Individual Defendants removed Lall as a director and employee of the Portal Entities in November 2022, that removal <u>did not affect Lall's rights to receive his tokens</u> (or maintain his equity). *See* AC ¶¶ 6 (Lall "was still promised an equal share of the soon-to-be issued" tokens), 91 (Lall still stood to "receive the soon-to-be-issued Portal tokens"). Indeed, the Amended Complaint alleges that the Individual Defendants made Lall an offer to settle his rights, which he declined. AC ¶ 86. The Amended Complaint further alleges that with respect to third-party investors, the Individual Defendants acted as if they were bound by the token agreements made by them in their capacity as Portal Founders. *See* AC ¶¶ 116–119. But even if the Individual Defendants <u>had</u> repudiated their intention to honor the Founders' Token Agreement, as explained above, that only would have constituted an "anticipatory breach" giving Lall "the option of suing immediately." *McCaskey*, 189 Cal. App. 4th at 958.

In other words, repudiation prior to the time of performance could not have triggered the statute of limitations for Lall's first four claims. And it would make no sense to reason that Lall was obligated to sue the Individual Defendants before the project's tokens even existed.

*Parker v. Walker*, 5 Cal. App. 4th 1173, 1190 (1992), principally relied upon by Defendants in support of their repudiation argument, does not change the analysis and is distinguishable. As an initial matter (and as the excerpt quoted by Defendants states), *Parker* addressed a suit to "enforce" an oral contract, not a suit for breach of one. In *Parker*, the California Court of Appeals settled a decades-long probate dispute between Walker and his business-partner Crosley's heirs (including Parker). In 1963, Walker and Crosley had won their own breach of contract claim but could not agree on how to divide the proceeds, which languished in a trust for more than two decades, compounding into a small fortune. In the interim, Crosley passed away, and eventually, Parker petitioned the probate court for half of the proceeds on the premise that Walker and Crosley had been equal partners. In 1989, <u>more than twenty years after Crosley's death</u>, Walker cross-petitioned, and, for the first time, argued he was owed the entirety of the sum pursuant to an oral agreement. On these facts, the California Court of Appeals held that Walker's petition to enforce a contested oral agreement at the expense of a long-since-passed business partner was time-barred. In doing so, the court relied not on the generally-applicable rules governing oral contracts and repudiation, but on the much narrower exception articulated in *Viau v. Viau*, 57 Cal. App. 66, (1922), where the Court of Appeals held that "an action for <u>specific performance</u> of an oral contract to convey land" must be brought two years after repudiation (emphasis added). In sum, *Parker* stands for a niche rule relevant to certain actions to compel specific performance, not claims such as Lall's, which seek damages for the breach of an agreement. None of the equitable principles relevant to *Parker* (or *Viau*) apply here, where Lall is reasonably seeking redress for a broken promise shortly after suffering the commensurate harm.

2. <u>Defendants' "Injury" Argument Is Based on Inapplicable Tort Law</u>

As set forth above, the statute of limitations for breach of oral contract claims begin to run when the claim is actionable – "when the party charged with the duty to perform under the contract fails to perform." *Manley v. M.A.C. Cosmetics Inc.*, 2026 WL 184588, at *2 (C.D. Cal. Jan. 16, 2026). Nonetheless, the Motion mistakenly argues that the Individual Defendants' decisions to dissolve the Portal Entities and form the Puffer Entities throughout 2023 (which Lall does not allege he discovered in real time) injured Lall and therefore triggered the statute of limitations for Lall's contract-based claims. In support of the premise that "the two year statute of limitations began to run" "[w]henever Lall first purportedly suffered any injury—however-slight—from the alleged breach of contract"

(Mot. at 2), the Motion relies exclusively on three tort cases. *See* Mot. at 2–3, 6, *citing Spellis v. Lawn*, 200 Cal. App. 3d 1075, 1080-81 (1988); *Nodine v. Shiley Inc.*, 240 F.3d 1149,1153-54 (9th Cir. 2001); *Viramontes v. Pfizer, Inc.*, 2018 U.S. Dist. LEXIS 114646 at *22–23 (E.D. Cal. July 9, 2018). None of these cases involve any contract claims, and the portions cited in the Motion simply stand for boilerplate concepts of tort injury and liability. And *Spellis*, which the Motion cites multiple times, confirms the rule that "[i]n ordinary tort and contract actions, the statute of limitations ... begins to run upon the occurrence of the last element essential to the cause of action." 200 Cal. App. 3d at 1079 (emphasis added).

The Motion thus ignores that the Individual Defendants could not perform under the Founders' Token Agreement unless and until they issued their project token, which did not occur until October 2024. The Individual Defendants never told Lall that they intended to not perform. *See, e.g.*, AC ¶ 6. Employment, equity, and token rights are all different concepts, and indeed, former employees and directors receive tokens after their departure all the time (in part precisely because tokens do not implicate corporate control).

3. The Relation Back Doctrine Moots Defendants' Timeliness Arguments

Even if the Individual Defendants' formal dissolution of Portal B.V.I. in September 2023 – which Lall does not allege he discovered prior to preparing the Complaint – somehow breached the Founders' Token Agreement, the Motion to dismiss Lall's first three claims would still be without merit because those claims clearly relate back to Lall's June 11, 2025 original Complaint.

The Ninth Circuit has held that "[a]n otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading. Under Rule 15(c)(1)(B), an amendment asserting a new or changed claim relates back to the date of the original pleading if the amendment 'arose out of the conduct, transaction, or occurrence set out ... in the original pleading.' An amended claim arises out of the same conduct, transaction, or occurrence if it 'will likely be proved by the 'same kind of evidence' offered in support of the original pleading.'" *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (cleaned up). Following Supreme Court guidance, this Court has recognized that "[t]he purpose of relation back is 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules

of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Wilkins-Jones v. Cnty. of Alameda*, 2012 WL 3116025, at *11 (N.D. Cal. July 31, 2012).

Here, Lall's first three claims for breach of contract, breach of covenant of good faith and fair dealing, and quantum meruit unquestionably arises out of the same conduct, transactions, and occurrences alleged in Lall's original Complaint. All three claims arise out of the facts that Lall and the Individual Defendants agreed "to allocate 20% of the Portal token supply for themselves, as well as future employees" (Complaint ¶ 47), that "[a]t all relevant times, the Individual Defendants and Lall also stood to receive an equal number of Portal tokens" (*id.* ¶ 106), and that "on October 14, 2024, Defendants conducted a token generation event" to issue that token (*id.* ¶ 93). The initial Complaint even included the attendant injury as one of the injuries predicating Lall's direct breach of fiduciary duty claim (*id.* ¶ 106). Precisely because the Court encouraged Lall to reconsider how he articulated his direct versus derivative claims, and in an effort to clarify the nature of the injuries he has suffered personally, Lall has separated his personal token-related injuries from his other claims.

Ultimately, Lall's first three claims are predicated on the same facts and circumstances alleged in Lall's initial June 2025 Complaint, less than two years after the earliest point at which the Individual Defendants plausibly breached their obligation to provide Lall an equal allocation of project tokens. Accordingly, Lall's first three claims are not time-barred.

**B. <u>Lall's Third Claim for Quantum Meruit is Sufficiently Alleged</u>**

Quantum meruit "is a quasi-contract claim for the reasonable value of services rendered." *Jogani v. Superior Ct.*, 165 Cal. App. 4th 901, 909 (2008). The Motion does not contest the existence of the Founders' Token Agreement, but that of course does not warrant dismissal of this claim, pleaded in the alternative, especially given the nature of the Individual Defendants' scheme involving alleged successor entities. And the Motion's argument that the Amended Complaint does "not plead that [the Individual Defendants] made a specific request for [his] services" flies in the face of the Amended Complaint's allegations. The Amended Complaint details how Lall provided a range of services specifically in connection with the Portal token that the Individual Defendants "rebranded" as their own. AC ¶ 77–79.

In arguing otherwise, the Motion relies on insurance disputes that are not analogous to Lall's claims. In both *Summit Est., Inc. v. Cigna Healthcare of California, Inc.*, 2017 WL 4517111 (N.D. Cal.

Oct. 10, 2017) and *ABC Servs. Grp. v. Health Net of Cal., Inc.*, 2020 WL 4668142 (C.D. Cal. Aug. 3, 2020) district courts held that the plaintiffs, substance abuse and mental health facilities, respectively, could not bring quantum meruit claims against insurers where such insurers were never alleged to have requested the plaintiffs provide any services. Again, the Amended Complaint spells out that Lall performed requested services – many of which related directly to the withheld tokens.

### C. <u>Lall's Fourth Claim for Unjust Enrichment is Sufficiently Alleged</u>

Defendants fail to raise any non-conclusory arguments in support of dismissal of Lall's fourth claim for unjust enrichment. As the fourth claim alleges, the Individual Defendants have unlawfully enriched themselves by withholding Lall's equal share of tokens. AC ¶¶ 191–192.

The Motion is effectively silent on Lall's fourth claim, haphazardly arguing that the fourth claim and the seventh claim are "meritless, as the Court previously signaled at the December 4, 2025 hearing on Defendants' initial motion to dismiss." Mot. at 9. But Lall's fourth claim was not even alleged in Lall's original Complaint, and thus was not discussed at the December 4, 2025 hearing; the Court never described the fourth cause of action as "meritless." To the contrary, the Amended Complaint adds the fourth claim in response to the Court's prior guidance, and to clarify which harms have been incurred by Lall personally as opposed to Portal Oracle as a company.

## II. <u>LALL'S BREACH OF FIDUCIARY DUTY CLAIMS ARE SUFFICIENTLY ALLEGED</u>

Lall's fifth and sixth claims sufficiently assert that the Individual Defendants breached their fiduciary duty. The fifth claim is derivative and the sixth is direct. Claims "for breach of fiduciary duty require[] proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).[1] Directors owe their corporations and shareholders the duties of due care, loyalty, and good faith. *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001). "A controlling stockholder also owes fiduciary duties to the corporation and its minority stockholders, and it is prohibited from exercising corporate power so as to advantage [itself] while disadvantaging the corporation." *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 712 (Del. Ch.

[1] California follows the "internal affairs" doctrine, which applies the law of the state of incorporation to matters of liability of directors. Cal. Corp. Code § 2116; *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1087 (N.D. Cal. 2003).

2023) (cleaned up). Breaches include "fraudulent, or wrongful act[s]," such as the misappropriation of corporate assets, or the usurpation of corporate opportunities. *Beard*, 8 A.3d at 602.

The characterization of a claim as derivative or direct turns on who the alleged misconduct harmed, and who stands to benefit from any recovery. *See* Mot. at 13 (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004)). Accordingly, where a shareholder's injury is simply collateral to an injury to the entire corporation, the claim is derivative. On the other hand, a shareholder may have a direct claim in addition to a derivative claim where the injury is "individual, separate and distinct." *Van Steenwyk v. Van Steenwyk*, 2021 WL 4815212, at *4 (C.D. Cal. Mar. 23, 2021). Recognizing that Lall's claims "ha[ve] attributes that permit[] them to be pled either as derivative claims or direct claims," the Complaint alleges both derivative and direct breach of fiduciary duty claims against the Individual Defendants. *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1052 (Del. Ch. 2015), as revised (May 21, 2015). *See also id.* n.16 (collecting cases where plaintiffs appropriately alleged both derivative and direct claims).

1. <u>The Amended Complaint Sufficiently Alleges a Derivative Breach of Fiduciary Duty</u>

The Motion's argument for why Lall's derivative breach of fiduciary duty claim should be dismissed is the single baseless assertion that the Complaint does not indicate how Portal was injured. This argument is limited to a couple of sentences carried over from Defendants' prior motion to dismiss.

Regardless, the Amended Complaint alleges that the Individual Defendants directly harmed Portal Oracle. *See, e.g.*, AC. ¶¶ 76, 95, 114, 136 (misappropriating Portal Oracle's code, branding, and intellectual property), 58, 11(a)-(c), 69–74, 80, 82, 115–128 (misappropriating and otherwise usurping Portal Oracle's prospective partnerships and funding opportunities), 105–107, 109, 111–112, 138, 148–149 (diverting and liquidating digital asset holdings owed to Portal Oracle without any consideration), 94–96, 112–114 (providing Puffer Labs Corp. access to Portal Oracle's corporate records without any consideration or known valid agreements between the entities), 140–143, 146, 149 (launching the Puffer token in lieu of the Portal token, depriving Portal Oracle of funding).[2]

[2] Insofar as the Court interprets the Amended Complaint as challenging particular transactions, such challenge is plainly subject to the entire fairness standard, as opposed to the business judgment rule. *In re KKR Fin. Holdings. LLC S'holder Litig.*, 101 A.3d 980, 990 (Del. Ch. 2014) (business judgment rule is rebutted where "(1) a controlling stockholder stands on both sides of a transaction or (2) at least half of the directors who approved the transaction were not disinterested or independent.").

Beginning with the misappropriation of assets, "[m]ost basically, the duty of loyalty proscribes a fiduciary from any means of misappropriation of assets entrusted to his management and supervision. Thus, for example, it requires a fiduciary to refrain from self-interested transactions with the corporation unless the terms of such a transactions are entirely fair." *U.S. W., Inc. v. Time Warner Inc.*, 1996 WL 307445, at *21 (Del. Ch. June 6, 1996). The Complaint alleges the Individual Defendants diverted all of Portal's assets, plainly violating the Individual Defendants' fiduciary duties to Portal. AC. ¶¶ 92–114 (outlining how, beginning in late 2022, Individual Defendants misappropriated and usurped all of Portal Oracle's business and began doing business as Puffer Finance).

With regard to the Individual Defendants' usurpation of Portal Oracle's corporate opportunities, under Delaware law's "corporate opportunity doctrine," "a corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation." *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996). As alleged, Portal Oracle was poised to launch an anti-slashing staking protocol with the support of marquee partners, including, but not limited to, the Ethereum Foundation and Binance Labs. AC ¶¶ 58, 70–76. The Amended Complaint further alleges that Portal's protocol would feature the native Portal token. AC ¶¶ 2, 8, 31, 66. Portal Oracle was positioned to exploit each of these opportunities for itself when the Individual Defendants usurped them, leaving Portal Oracle high and dry. AC ¶¶ 5, 106–107. Worse still, the Individual Defendants did not even pretend to engage in a pretextual sale or transfer of assets for any consideration; they simply repackaged those assets under the umbrella of the Puffer Defendants. *Id.* The Amended Complaint further alleges that the Individual Defendants continue to operate Puffer Labs. Corp. and attain benefits that should have accrued to Portal Oracle. In short, they stole Portal Oracle's business.

2. <u>The Complaint Sufficiently Alleges a Direct Breach of Fiduciary Duty</u>

Lall recognizes that based on the Court's preliminary assessment of the initial Complaint, Lall's breach of fiduciary duty claim sounded as a derivative claim. Nonetheless, the Amended Complaint pleads a direct breach of fiduciary duty claim based on the full body of allegations in the Amended Complaint, which spells out, in more detail, how the Individual Defendants specifically targeted Lall, as

opposed to just Portal Oracle, supporting both alternative theories. Lall's direct claim is brought in good faith in view of what Lall anticipates may be complex questions of remedy.

Indeed, under Delaware law, courts have routinely upheld direct claims for pro rata recovery in certain extraordinary circumstances: (1) "Cases where the defendants are insiders who misappropriated corporate property such that an entity-level recovery would return the property to the wrongdoers' control;" (2) "Cases where an entity-level recovery would benefit 'guilty' stockholders, but an investor-level recovery could be more narrowly tailored to benefit only 'innocent' stockholders; and (3) "Cases where the entity is no longer an independent going concern, such that channeling the recovery through the corporation is no longer feasible or a *pro rata* recovery is more efficient." *Goldstein v. Denner*, 2022 WL 1797224, at *17 (Del. Ch. June 2, 2022) (collecting cases).

In addition to Lall's derivative breach of fiduciary duty claim against the Individual Defendants, the Amended Complaint sufficiently alleges that by excluding Lall from any of the benefits of his Portal Oracle shareholding, the Individual Defendants injured Lall in a manner that was not just collateral to the corporate injury. *See* AC ¶ 8 (describing the overall scheme), 84–86 (describing Defendants' exclusion of Lall from Portal and refusal to negotiate), and 105 (describing how the Individual Defendants liquidated Portal's multi-signature wallet to, in part, exclude Lall's access).

The Motion argues that Lall's direct breach of fiduciary duty claim is a disguised derivative claim, but ignores the well-pleaded allegations in the Amended Complaint illustrating that the Individual Defendants' scheme was specifically designed to injure Lall, and that insofar as this injury was distinct from the generalized injury to Portal Oracle (or its offshore affiliates), such recovery in this action should run to Lall alone. Indeed, under *Tooley* and its progeny, the root of the analysis is equitable in nature – "a court should look to the nature of the wrong and to whom the relief <u>should</u> go." *Tooley*, 845 A.2d at 1039 (emphasis added). Here, the Individual Defendants, who together constitute controlling shareholders as well as a majority of the Portal Board, unlawfully cut Lall out of the business, while remaining shareholders in Portal and in turn, the Puffer Defendants which they continue to operate as "mere continuations" and successors of the Portal Entities. AC ¶¶ 94, 119. *See also Natomas Gardens Inv. Group LLC v. Sinadinos*, 2009 WL 1363382, at *17 (E.D. Cal. May 12, 2009).

More specifically, the Amended Complaint does not just allege that the Individual Defendants misappropriated all of the Portal Entities' assets, including their intellectual property and funds, but also alleges they did so with the express purpose and effect of cutting Lall out as a co-founder, equal shareholder, and corporate director. *See, e.g.*, AC ¶¶ 7–10, 91. The premeditated effect of the Individual Defendants' scheme was to destroy Lall's ability to accrue value from his Portal shares. *Id*. Collectively, these well-pleaded allegations are more than sufficient, at this early stage, to support "the reasonable inference that [the Individual Defendants are] liable" for breaching their fiduciary duties to Lall individually. *Iqbal*, 556 U.S. at 678. *See also MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *22 (S.D. Cal. Aug. 27, 2020) (denying motion to dismiss direct claim by "the only shareholder kept in the dark about Defendants' fraudulent scheme"). Under Delaware law, these actions have deprived Lall of his personal shareholder rights. *See In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 802 (Del. Ch. 2022) ("impairment" of stockholder's right to either vote on or redeem shares before merger supports a direct claim).

Finally, it is proper for Lall to bring a direct breach of fiduciary duty claim because the Amended Complaint alleges that Defendants have taken actions to wind down or otherwise discontinue Portal Oracle. AC ¶ 145. Insofar as Portal Oracle is defunct, equitable considerations dictate that any recovery flows directly to Lall. *See Goldstein v. Denner*, 2022 WL 1797224, at *17 (Del. Ch. June 2, 2022) (discussing how courts have discretion to craft "investor-level recovery on an entity-level claim" where such remedy would avoid benefiting the guilty parties, and collecting cases discussing the same).

## III. LALL'S UNJUST ENRICHMENT CLAIM AGAINST ALL DEFENDANTS IS SUFFICIENTLY ALLEGED

The Amended Complaint sufficiently alleges a direct unjust enrichment claim, which, along with Lall's final claim for a declaratory judgment and constructive trust, is the only substantive cause of action targeting the Puffer Defendants. Lall's seventh unjust enrichment claim is therefore a critical vehicle for a meaningful recovery of the assets currently held by the Puffer Defendants.

Under Delaware law, unjust enrichment "is a flexible doctrine that a court can deploy to avoid injustice." *Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at *42 (Del. Ch. Apr. 14, 2017), as corrected (Apr. 25, 2017). A party must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the

absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). The Motion's argument that Lall has failed to establish the third and fifth elements is without merit.

First, Defendants' regurgitated argument that the Amended Complaint does not allege the absence of a legal remedy overlooks that the unjust enrichment claim is not "rooted in the same theory" as the Amended Complaint's legal claims. Lall's unjust enrichment claim is the sole claim through which Lall can redress the damages he incurred as the sole oppressed founder of the Offshore Portal Entities (including Portal B.V.I. and the Portal Foundation), such as the fees. revenue, income, and other appreciating assets (e.g. intellectual property). Absent this claim, the Puffer Defendants will unjustly evade liability.[3] As such, the Motion's reliance on *Julian v. TTE Tech., Inc.*, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020), is wholly misplaced. Unlike the unjust enrichment claim this Court dismissed in *Julian*, this is the <u>only</u> claim through which Portal itself could recover from the Puffer Defendants.

Moreover, given the early stage of this litigation, the Motion's discussion of the recent *King v. Nat'l. Gen. Ins. Co.*, 2025 WL 2494366 (N.D. Cal. Aug. 29, 2025) case misses the mark. *See* Mot. at 10–11. In *King*, Judge Ryu emphasized that her reasoning was informed by the fact that the case was "nearing trial," and that at the pleading stage, it is typically not clear whether plaintiffs have a legal remedy as a matter of law. 2025 WL 2494366 at *8. However, as this Court explained in *Nacarino v. Chobani, LLC*, the law "rarely (if ever) require[s]" dismissal of equitable claims at the pleading stage, and "[p]laintiff's entitlement to seek the equitable remedy of restitution may be revisited at a later stage." 668 F. Supp. 3d 881, 896–97 (N.D. Cal. 2022).

Second, the Motion seems to concede that Defendants <u>were enriched</u>, but argues that there are insufficient allegations that such enrichment came at the expense of Lall in particular, as opposed to the Portal Entities. But as discussed above, Defendants ignore that the Amended Complaint makes allegations specifically regarding Lall's singular and personal injury. *See, e.g.* AC ¶¶ 91, 101.

## IV. <u>LALL'S FRAUD CLAIM IS SUFFICIENTLY ALLEGED</u>

Under California law, a plaintiff alleging fraud must establish the following elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

---

[3] For this reason, and to the extent the Court is inclined to agree with Defendants that Lall's direct unjust enrichment claim is duplicative of Lall's other claims, the Court should, at a minimum, allow Lall's unjust enrichment claim to proceed against the Offshore Puffer Defendants.

'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 87 (2001). The Motion argues that Lall has failed to allege his justifiable reliance on the Individual Defendants' fraudulent concealment, and separately that the economic loss rule bars Lall's fraud claim. Both points are baseless.

1. The Amended Complaint Alleges Lall's Justified Reliance

The Motion argues that the Amended Complaint does not allege justifiable reliance because when the Individual Defendants blindsided and terminated Lall's roles in the Portal Entities in November 2022, he realized they were attempting to force him out without adequate compensation. Mot. at 15–16. This argument misconstrues Lall's fraud claim (*see* AC ¶¶ 218–222), which does not turn on his surprise expulsion in November 2022, but rather the Individual Defendants' "knowingly misrepresenting and omitting their intentions to continue managing the Portal Entities while [Lall] remained a shareholder in Portal Oracle and Portal B.V.I.," with the obvious "inten[tion] to prevent Lall from exercising his rights as a minority shareholder of Portal Oracle and Portal B.V.I. and as a director of the Portal Foundation." *Id.* ¶¶ 218–219. Those actions, not the termination of Lall as an employee or director, led to Lall's justifiable reliance and injury. *Id.* ¶¶ 220–222. As controllers of the Portal Entities, the Individual Defendants were obliged to deal honestly with Lall; instead, they stole the Portal Entities' assets for themselves without attending to any of the appropriate or required disclosures. In short, the Individual Defendants lied to Lall for the sole (now-admitted (*see id.* ¶ 10)) purpose of furthering their own scheme to cut Lall out from his own companies.

2. The Economic Loss Rule is Inapplicable to Lall's Fraud Claim

The Motion next argues that the economic loss rule bars Lall's fraud claims because Lall alleges "an oral contract governing all of this." Mot. at 18. As the *Rattagan* case, which the Motion itself cites, makes clear, "the economic loss rule does not apply to limit recovery for intentional tort claims like fraud." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024).

In any event, the Motion plainly distorts the Amended Complaint, which alleges an oral contract concerning Lall's token allocation, and nothing else. AC ¶ 66 (describing Founders' Token Agreement). As discussed above, Lall's first four claims address that discrete agreement. In contrast, Lall's fraud claim expressly pertains to the Individual Defendants' fraudulent conduct which eliminated Lall's right and ability to participate in the Portal Entities and prevent Defendants' misdeeds. *Id.* ¶¶ 222–223.

Defendants may disagree that the factual record will support Lall's fraud claim, but on the well-pleaded allegations of the Amended Complaint, the Motion should be denied.

## V. LALL'S CLAIM FOR DECLARATORY JUDGMENT AND A CONSTRUCTIVE TRUST IS SUFFICIENTLY ALLEGED

Lall's final claim is a direct claim seeking a declaratory judgment that the Puffer Defendants operate as successors of the Portal Entities, and the imposition of a constructive trust comprised of one-third of their assets, to protect Lall's rights and guarantee equitable redress. The Motion does not address this claim, and instead regurgitates Defendants' prior, stale argument against a distinct version of Lall's declaratory judgment claim that appeared in his initial Complaint. *Compare* Mot. at 19–24 with Dkt. No. 28 at 16-21. Indeed, the Motion does not even mention successor liability at all. *Id*. The Motion should therefore be denied as to Lall's ninth claim. *See Qun v. Karstetter*, 2014 WL 12461260, at *10 (S.D. Cal. Sept. 24, 2014) ("Because defendants have not offered any other argument to support dismissal of these state claims, the court will not dismiss them.").

In any event, Lall's ninth claim is adequately alleged and directly responsive to the Court's misgivings about how Lall first articulated the "alter ego" aspect of the claim. There are "[f]our generally recognized exceptions" to the "well-settled rule of corporate law" that "where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor…: (1) it assumes liability; (2) the transaction amounts to a consolidation or merger; (3) the transaction is fraudulent and intended to provide an escape from liability; or (4) the purchasing corporation is a mere continuation of the selling company." *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77–78 (3d Cir. 1986) (citing 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 7122 (Perm.Ed.1983)). Likewise, under English law, courts may pierce the corporate veil where a complainant alleges "control of the company by the wrongdoer(s) *and* impropriety, that is, (mis)use of the company by them as a device or façade to conceal their wrongdoing," "as is necessary to provide a remedy for the particular wrong which those controlling the company have done." *In re Tyson*, 433 B.R. 68, 87 (S.D.N.Y. 2010). In other words, courts "will pierce the corporate veil when the corporate form is used as a way to evade prior, existing responsibilities." *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15 CV 9003-LTS-SN, 2016 WL 5719793, at *4

(S.D.N.Y. Sept. 30, 2016). The Amended Complaint plainly alleges that the Individual Defendants incurred liabilities to Lall which they specifically sought to avoid prior to forming the Puffer Defendants.

The Amended Complaint alleges the Puffer Defendants are "mere continuations" of the Portal Entities, which the Individual Defendants formed to escape liability owed to Lall. In particular, the Amended Complaint alleges that once they had "removed Lall as a director and officer form the Portal Entities," they took a series of actions, including "duplicat[ing] Portal Oracle, Portal B.V.I., and the Portal Foundation," and "treated the Puffer Defendants as successors to the Portal Entities." AC ¶¶ 91–143. The Amended Complaint further sets out how the Defendants fraudulently misappropriated the assets of the Portal Entities without paying any consideration (*see, e.g.*, *id*. ¶ 104), and in every respect represented the change from "Portal" to "Puffer" as a mere "rebrand" (*id*. ¶¶ 115–143), a characterization that was shared by Defendants' third-party investors (*see, e.g. id*. ¶ 137). The Puffer Defendants have continued operating the Puffer Defendants with the same officers and shareholders (except, of course, Lall himself). Together, these allegations are more than enough to maintain Lall's ninth claim. *See Monroe v. FTS USA, LLC*, 2026 WL 622263, at *5 (D. Del. Mar. 5, 2026), *report and recommendation adopted*, 2026 WL 792167 (D. Del. Mar. 20, 2026) ("The 'primary elements' of being the same legal entity have been said to include 'the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer").

In turn, a constructive trust is an appropriate remedy. *In re Green Energy Servs., Inc.*, 610 B.R. 760, 775 (D. Del. 2019). It is "one of many conceivable alternative remedies which might be available after trial should plaintiffs prevail on one or more of their theories of recovery," and there is no reason to "dismiss the request for imposition of the remedy of a constructive trust" at this stage. *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000). Indeed, where "fraud, breach of fiduciary duty or other act [] entitles the plaintiff to some relief," it makes sense to "treat[] a claim for constructive trust as a cause of action" that should not be dismissed merely because it is a remedy. *See also Line One Lab'ys Inc v. Wingpow Intl. Ltd.*, 2023 WL 6812760, at *11 (C.D. Cal Sept. 12, 2023).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

Dated: June 4, 2026

**MORRISON COHEN LLP**

*/s/ Michael Mix*
Michael Mix (*pro hac vice*)
Jason P. Gottlieb (*pro hac vice*)
William Roth (*pro hac vice*)
909 Third Avenue, 27th Floor
New York, NY 10022
Telephone: (212) 735-8747
mmix@morrisoncohen.com
wroth@morrisoncohen.com
jgottlieb@morrisoncohen.com

**LONDON & NAOR P.C.**

Ellen London (Cal. Bar No. 325580)
Michael Lundholm (Cal. Bar No. 336151)
1999 Harrison Street, Suite 2010
Oakland, CA 94612
elondon@londonnaor.com
mlundholm@londonnaor.com