**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: 512-420-8407

*Attorneys for Defendants Amirhossein Forouzani, Jason Andrew Vranek, Puffer Labs Corp., Puffer Foundation, and Puffer Staking Limited*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISHAL LALL,<br>Plaintiff,<br>vs.<br>AMIRHOSSEIN FOROUZANI, ET AL.,<br>Defendants. | Case No.: 3:25-cv-4948-EMC<br><br>**DEFENDANTS FOROUZANI, VRANEK, PUFFER LABS CORP., PUFFER FOUNDATION, AND PUFFER STAKING LIMITED'S REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**Hearing Date and Time:**<br>July 9, 2026 at 1:30 PM |

Defendants Amirhossein Forouzani, Jason Vranek (the "Individual Defendants"), Puffer Labs Corp. ("Puffer Corp."), Puffer Foundation, and Puffer Staking Limited ("Puffer Ltd.," and together with Puffer Corp. and Puffer Foundation, the "Puffer Entities") respectfully submit this reply in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Verified Direct and Derivative Action Amended Complaint filed by Plaintiff Vishal Lall (ECF No. 60).

## I. INTRODUCTION

Having been warned by the Court that his individual claims were likely to be dismissed, Lall has dedicated most of his Amended Complaint to trying to find some way to preserve an individual claim in some form. But in doing so, he has resorted to throwing spaghetti at the wall to see what sticks. He has now raised nine causes of action rather than the original four—but these claims as well do not survive a threshold review, and should not be permitted to proceed to discovery.

## II. ARGUMENT

### A. Lall's Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing Claims Must Be Dismissed

For the first time in an Amended Complaint, Plaintiff purports to have suddenly remembered that he agreed to an oral contract with the Defendants. This memory was apparently "jogged" by the Court's indication in a prior hearing that Lall's individual claims were at risk. Now, a detailed oral contract has materialized before the Court almost four years after it was supposedly agreed to, and just in time to attempt to salvage the individual aspects of Lall's lawsuit. But this last-ditch "recollection" of an oral contract's terms are not enough to bring a claim for its breach. That is because Lall's own pleadings, if taken as true,[1] establish accrual of a claim for breach at least as of November 2022.

[1] Plaintiff's Opposition suggests that by taking alleged facts as hypothetically true for purposes of this motion, as they are required to do, Defendants are "conceding" them.

The statute of limitation for breach of an oral contract is only two years—and this is for very specific policy reasons. "The fundamental purpose of such statutes is to protect potential defendants by affording them an opportunity to gather evidence while facts are still fresh." *Davies v. Krasna*, 14 Cal. 3d 502, 512, 121 Cal. Rptr. 705, 535 P.2d 1161 (1975). And the statute begins to run upon accrual of the claim, also for good reason: "To delay the running of the period of limitation until defendant's acts furnished plaintiff with a more certain proof of damages would contravene the principle that victims of legal wrong should make reasonable efforts to avoid incurring further damage." *Id.* at 515.

The policy reasons for this shorter statute of limitations (common in many states) were described by another court as follows: "In contrast, a shorter limitations period is applied to oral contracts because they are less reliable: 'the effect of lost evidence, faded memories, and missing witnesses is less prejudicial to the adjudication of the claim [on a written contract] than where parole evidence, memories, and witnesses will be relied upon to determine the actual terms of an oral contract.'" *Cohen v. UN-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 803 (Bankr. E.D. Va. 1999).

This case perfectly illustrates the policy reasons for avoiding such delay. Lall's sudden purported recall of very specific and self-serving oral contract terms is unreliable at this late date. If his allegations are truthful, he could have brought claims for **<u>at least</u>** injunctive relief in November 2022, which dooms his claim under controlling law because the original complaint was not filed until June 2025.

Lall's only response to this is to argue that there was no breach until October 2024 under the theory that, despite all that he has alleged, the oral "contract" somehow remained in good standing through October 2024. Thus, according to Lall, the claims for breach of contract and breach of the covenant of good faith and fair dealing had not accrued until that

---

Dkt. 72 at 22. This is a motion to dismiss, and Defendants do not "concede" any of Plaintiff's allegations.

time. But this ignores the pleadings, and misunderstands the law of accrual in connection to the statute of limitations.

### 1. A Cause of Action Accrues for Limitations Purposes When A Plaintiff is Entitled to a Legal Remedy

"The limitations period begins to run when the plaintiff possesses a true cause of action, i.e., where events have developed to a point where the plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 614, 7 Cal. Rptr. 2d 859 (1992). In *Sanyo Fisher*, the mere threat to terminate an oral contract in violation of a "good cause" provision was held to be enough to trigger the running of the statute of limitations, because it entitled plaintiff to a legal remedy. *Id.* This was because "[t]he infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period … neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." *Id.* (quoting *Davies v. Krasna*, 14 Cal. 3d 502, 513, 121 Cal. Rptr. 705, 535 P.2d 1161 (1975)).

"An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred." *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 754, 76 Cal. Rptr. 2d 749, 958 P.2d 1062 (1998). "[K]nowledge of the *facts*, rather than knowledge of the available legal theories or remedies, starts the statute of limitations." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 271 Cal. Rptr. 246, 249 (Ct. App. 1990) (emphasis in original).

It is also important that despite now describing the Defendants' activities as "secret," dkt. 72 at 12, that is not what was actually pled. The original Motion cited at length to quotations from the Complaint indicating that not only were these activities public, but Lall was well aware of them. Dkt. 66 at 4-5. None of this has been disputed.

### 2. The Amended Complaint Alleges the Oral Contract Applied to the Portal Entities

The Amended Complaint is unambiguous in its allegations about the oral agreement's terms: "The Portal Founders also came to an agreement with respect to allocating their (not yet issues) Portal Token. They set aside 30% for outside investors, and agreed to reserve and allocate 20% of the Portal Token supply for the Portal project team, including subsequent hires." Dkt. 60 at ¶ 66. It continues: "The Portal Founders further agreed that of the 20% of Portal Tokens reserved for the Portal project team, a minimum of 10% of the total Portal Token supply would be split equally amongst themselves (i.e., each of them would receive at least 3.33% of the total Portal Token supply (the "**Founders' Token Agreement**")." *Id.* (emphasis in original).

The Amended Complaint is further unambiguous in pleading that these Portal Tokens were never issued: "Portal B.V.I. was a British Virgin Islands corporation, incorporated for the purpose of issuing the Portal Tokens, <u>**which were never issued because Defendants diverted the Portal Entities' assets and business to the Puffer Entities**</u>." *Id.* at ¶ 31; *see also id.* at ¶ 6 ("Lall, however, still held an equal equity share of Portal Oracle and Portal B.V.I., and was still promised an equal share of the soon-to-be issued Portal protocol tokens (the "**Portal Tokens**")." (emphasis in original).

The question for the Court is thus as follows: if the allegations of the Complaint are true, could Lall have filed a lawsuit for breach of this oral contract before June of 2023, two years before the original Complaint? And the only possible answer is that, yes, he could have.

If his allegations are true, then the oral agreement was for the Portal Entities to issue a Portal Token. But not only does the Complaint allege that they failed to do so, it alleges that "the Individual Defendants have effectively abandoned the Portal Entities since November 2022." Dkt. 60 at ¶ 144; *id.* at ¶ 169. He alleged that Portal Foundation had been publicly legally dissolved in April 2023. *Id.* at ¶ 30. He alleged that "Corporate records confirm that by February 24, 2023, the Individual Defendants transferred all of the Portal

Entities' assets controlled by the Individual Defendants in California for the benefit of the Puffer Defendants, including the Offshore Puffer Defendants." *Id.* at ¶ 109.

And as highlighted in bold, underlined text above, he specifically alleges that the Portal Token was never issued "because" of this asset diversion, which he also alleges was completed by February 24, 2023—more than two years before suit was filed.

It is difficult to see how a claim for breach of this "Portal Token" agreement for the "Portal Entities" to issue "Portal Tokens" had not accrued when (1) the Portal Entities had been abandoned or dissolved, such that the agreement was now incapable of being performed as agreed, (2) their assets had allegedly been fully transferred to other entities, and (3) that alleged asset diversion in February 2023 was specifically alleged as the reason that the Portal Tokens were not issued pursuant to the terms of the oral agreement.

The Court should thus ask itself: if Lall had attempted to file a breach of oral contract claim in February 2023 making these same allegations, would it have dismissed the claim on the grounds that it had not yet accrued for lack of a breach? "The wrongful, i.e., the unjustified or unexcused, failure to perform a contract is a breach." *Sharpe v. FDIC*, 126 F.3d 1147, 1153 (9th Cir. 1997). With the Portal Entities abandoned or dissolved, they could not issue the Portal Tokens as allegedly agreed. And according to Lall, the Portal Tokens "were never issued because Defendants diverted the Portal Entities' assets and business to the Puffer Entities", dkt. 60 at ¶ 31—which was done by February 2023. There is no doubt even from a cursory reading of the Amended Complaint that Lall alleges all of this was "wrongful." That, therefore, is a breach, according to his own allegations.

Lall does not plead in his Amended Complaint that the oral agreement was to issue a "Puffer Token." He cannot plead that the agreement is one thing (to issue "Portal Tokens") and then argue that it was not breached when that did not happen. **It is further important that Lall repeatedly pled that the original agreement was to issue the Portal Tokens in or around November 2022.**

The Complaint is unambiguous in alleging that under the agreement, these were "soon-to-be-issued" Portal Tokens, whose issuance was prevented by an alleged decision by Defendants as follows: "Apparently unsatisfied with either of these legitimate options, and realizing that Lall could not be pressured into relinquishing his Portal Oracle and Portal B.V.I. equity or rights to their **soon-to-be-issued Portal Tokens** the Individual Defendants chose a third, flagrantly illegal option. The Individual Defendants conspired to misappropriate the Portal Entities' assets (including prior venture funding) and corporate opportunities to their 'new' Puffer Entities, without paying any consideration or observing any of the necessary corporate processes." *Id.* at ¶ 8 (emphasis added).

It is further unambiguous that when the Complaint pled that the Portal Tokens were "soon-to-be issued" under the alleged oral agreement, it is referring to November 2022. *Id.* at ¶ 91; *see also id.* at ¶ 68.

"It is well-established that where a contract does not specify a time for performance, the party is obliged to perform within a reasonable time, and the statute of limitations begins to run when a 'reasonable time' has expired without performance." *IV Sols., Inc. v. United Healthcare*, No. CV 15-01418 DDP (SSx), 2015 U.S. Dist. LEXIS 88869 at *6 (C.D. Cal. July 7, 2015). "If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained." Cal. Civ. Code § 1657. And importantly, Plaintiff **must plead** facts showing that a reasonable time did not expire without performance. *IV Sols., Inc. v. United Healthcare*, No. CV 15-01418 DDP (SSx), 2015 U.S. Dist. LEXIS 88869 at *6 (C.D. Cal. July 7, 2015).

If, as Lall pleads, the agreement was to issue Portal Tokens sometime in the November 2022 timeframe, then Defendants could not simply wait indefinitely to issue the tokens, just as Lall could not wait indefinitely to sue. It is immaterial that two years later, the Puffer Tokens were issued. That is because the statute of limitations had begun to run long before

then when the Portal Tokens were not issued in a "reasonable time" after November 2022, as the agreement supposedly required.

**3. Lall Could Have Sued for Injunctive Relief, Which Triggers the Running of the Statute of Limitations**

Another key problem for Plaintiff's new accrual theory is that based on the facts he has alleged, he certainly could have sued for injunctive relief at least as of October 2022. The California Supreme Court in *Davies* expressly held that the ability to sue for injunctive relief meant that a cause of action for breach of contract had accrued for the purposes of the statute of limitations. There, the plaintiff attempted to argue that "at the time of discovery the actual damages were too speculative to justify an award" and thus his claim did not accrue until he was later damaged. *Davies*, 14 Cal. 3d at 514. The California Supreme Court rejected this argument because his ability to sue for injunctive relief had accrued, even if damages were uncertain: "Davies, moreover, could have included in a 1955 action for actual damages a prayer for injunctive relief to bar defendant from further unauthorized disclosure or use of Davies' story. Such an action would have enabled him to cover all fronts -- to collect for past damage and demonstrable prospective damage, and to minimize the likelihood that defendant would later act in ways likely to increase damages." *Davies*, 14 Cal. 3d at 514.

A Pennsylvania federal court interpreting California law likewise held that because of *Davies*, the ability to seek injunctive relief was dispositive of accrual: "He could have sued for his share of the profits, for an accounting of any future profits, and/or for an injunction to prohibit future exploitation of the Characters without some assurance that Brown would receive his 'fair share.'" *Brown v. Cosby*, 433 F. Supp. 1331, 1341 (E.D. Pa. 1977). Even if Lall's damages were uncertain as of November 2022, he could have filed for injunctive relief, because as of that date, he has pled he was aware of the alleged scheme.

**4. Lall's "Relation Back" Argument is Irrelevant**

Lall's "relation back" argument is unavailing. It is irrelevant if the Amended Complaint relates back to the June 2025 Complaint, because June 2025 was too late to file the claims. They had already accrued more than two years before that date.

**B. Lall's Quantum Meruit Claim Fails**

Without citing any law in support, Plaintiff asks the Court to rewrite the elements of quantum meruit, eliminating the requirement that a Defendant "explicitly or impliedly requested the services at issue." Compare dkt. 72 at 16-17 to dkt. 66 at 6-8. His only basis for doing so is that Defendants cited case law involving insurance disputes over healthcare, a common scenario resulting in quantum meruit claims.

But many other cases have made clear that this black-letter requirement applies outside of the insurance and health care context. *See, e.g., Taylor v. Google, LLC*, No. 22-16654, 2024 U.S. App. LEXIS 4642 at *6 (9th Cir. Feb. 28, 2024) (unpublished) (applying the requirement to use of cellular data); *FedEx Corporative Servs. v. Dose of Roses, Inc.*, No. LA CV 2:23-06391 JAK (RAOx), 2024 U.S. Dist. LEXIS 18996 at *7-8 (C.D. Cal. Jan. 30, 2024) (shipping services); *1440 Sports Mgmt. Ltd. v. PGA Tour, Inc.*, No. 22-cv-02774-TLT, 2023 U.S. Dist. LEXIS 75673 at *14 (N.D. Cal. Mar. 10, 2023) (sponsorship services for a golf tournament).

As the Supreme Court of Virginia explained in analyzing this basic common law element in the context of a dispute over towing a vehicle: "When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment." *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486, 840 S.E.2d 337 (2020). While Plaintiff does not meet the elements of either cause of action, quantum meruit is not even theoretically applicable to this kind of dispute between co-founders. While he claims to have pled that he **performed** services as a co-founder of a business, nowhere does he plead that any of these services were **at the specific request** of either of the individual Defendants. As explained in the original motion, instead he pled at length that he was a collaborator acting as a co-equal partner and as a senior executive. Dkt. 66 at 6-7. Lall was not a vendor, the

traditional plaintiff in a quantum meruit claim, and the Court should not expand the common law to cover business partners working as alleged "co-equals."

**C. Lall's Breach of Fiduciary Duty Claims Fail**

Plaintiff's Amended Complaint—and its Opposition—suffer from another fatal defect which has been flagged, but not corrected. And that is that Portal Oracle Corporation is a distinct entity with distinct assets from Portal Foundation and Portal Oracle Limited. These are separate companies. Only one of the three is suing. And yet the Amended Complaint (as the original did) improperly lumps the three together as if they were one.

Portal Oracle Corporation has no standing to sue for assets or opportunities owned by the other two companies. When the Amended Complaint refers to "Portal Oracle Corporation," it uses the shorthand "Portal Oracle." Dkt. 60 at 1. Yet many of the assets and opportunities it purports to sue over are grouped together as belonging to the "Portal Entities," "Portal," or the "Portal Project." Lall's laundry list of paragraphs frequently uses these terms. This amounts to impermissible group pleading—lumping the three entities together as if they were one. *Karkanen v. California*, No. 17-cv-06967-YGR, 2018 U.S. Dist. LEXIS 135536 at *18 (N.D. Cal. Aug. 10, 2018) ("Courts consistently conclude that a complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'") (citing *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (brackets in original). By lumping the "Portal Entities" and "Portal project," Plaintiff does not properly permit a standing analysis on the derivative claim.

As for the breach of fiduciary duty claim raised by Lall individually, he cites primarily *Goldstein v. Denner*, No. 2020-1061-JTL, 2022 Del. Ch. LEXIS 125 (Del. Ch. June 2, 2022) in support of the idea that he may sue individually for damage to Portal Oracle Corporation. But that case solely deals with *pro rata* recovery as a **remedy** for a derivative breach of fiduciary duty claim. *Id.* at *45-46 (describing it as a "remedy" on a "derivative claim"). This does not justify Lall separately suing individually for "tens of millions" to be

granted entirely to himself without reduction appropriate to his percentage of the shares. The individual breach of fiduciary duty claim specifically requests only this *pro rata* recovery. Dkt. 60 at ¶ 203. Because this *pro rata* recovery is a remedy under Delaware law, it must be dismissed as a separate cause of action, as discussed in more detail below as to the constructive trust cause of action.

**D. Lall's Unjust Enrichment Claims Fail**

Plaintiff has raised two separate unjust enrichment claims (the Fourth and Seventh Causes of Action). Neither plead the required element of an inadequate remedy at law.

Lall's defense of his Fourth Cause of Action is barebones at best, dkt. 72 at 17, and for good reason. The Fourth Cause of Action does not contain any language which could even arguably plead that there is no adequate remedy at law. Dkt. 60 at ¶ 189-194. Even now in his own Opposition, Lall admits that the Fourth Cause of Action is based on this theory: that "the Individual Defendants have unlawfully enriched themselves by withholding Lall's equal share of tokens." Dkt. 72 at 17. But this is the same theory underlying the concurrently-raised legal claims of breach of contract (First Cause of Action), dkt. 60 at ¶ 153-163, and breach of covenant of good faith and fair dealing (Second Cause of Action), dkt. 60 at ¶ 164-176. Both of these legal claims are made by Lall as an individual against the individual Defendants. Both of these legal claims are based on the same theory as the Fourth Cause of Action (that the individual Defendants unlawfully withheld Lall's share of tokens). Yet not a word in the Amended Complaint even attempts to plead that those legal claims are inadequate remedies.

The Seventh Cause of Action for unjust enrichment is raised as a direct claim by Lall personally against all Defendants. Dkt. 60 at 42. It is based on a different theory of injury from the Fourth Cause of Action: the frustration of "Lall's personal rights as a director of the Portal Foundation" and "the misappropriation of the Portal Entities' assets and opportunities." But the Fifth and Sixth Causes of Action for breach of fiduciary duty (a legal claim) seek monetary damages against the individual Defendants for these exact same

harms, as does the Eighth Cause of Action for fraud. There is, again, no effort whatsoever to plead the element as to the individual Defendants.

As for the corporate Defendants, the Amended Complaint expressly "reserves the right to commence proceedings in the British Virgin Islands and the Cayman Islands" against those Defendants. Dkt. 60 at ¶ 214. While it pleads that "derivative claims on behalf of those entities are not presently available under applicable law," *id.*, the Seventh Cause of Action is not a derivative claim. It is Lall's own. **Lall** must thus plead **that he personally** has an inadequate remedy at law against the corporate defendants. But he has not even tried.

And importantly, this is not an issue which Plaintiff may plead in the alternative. *See Clevenger v. Welch Foods Inc.*, No. SACV 20-01859-CJC (JDEx), 2022 U.S. Dist. LEXIS 235432 at *10 (C.D. Cal. Dec. 14, 2022) ("Finally, Plaintiffs argue that they are permitted to plead equitable remedies in the alternative. But this argument has been explicitly rejected by numerous courts post-*Sonner*.") (internal citations omitted); *In re Cal. Gasoline Spot Mkt. Antitrust Litig*., No. 20-cv-03131-JSC, 2021 U.S. Dist. LEXIS 59875 at *30-31 (N.D. Cal. Mar. 29, 2021) (collecting cases).

Plaintiff heavily relies on this case being in the pleading stage to distinguish other authorities. But this exact argument has been rejected where, as here, other legal claims for monetary damages have also been pled. *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020). The *Anderson* court rejected this argument where "the plaintiffs have not *pleaded* inadequate remedies at law to begin with…." *Id.* (emphasis in original). The court explained that pleading this element is not optional: "Under *Sonner*, the plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done. Because they also request money damages, it is possible their legal remedy is sufficient; on this record, they have not yet disproven that." *Id.* at 1009.

This issue was previously raised by Defendants in the original motion to dismiss, dkt. 28 at 15, and there is no reason to allow further amendment now that the issue remains uncorrected.

**E. Lall's Fraud Claim Fails**

Lall defends his fraud claim with a minimalist response which ignores the bulk of the arguments made by Defendants, dkt. 66 at 14-19. That is because the fraud claim is not defensible.

As to justified reliance, Lall does not dispute that this is a required element of the claim. He does not dispute that he pled, repeatedly, that he had actual knowledge of the scheme he alleges in November 2022. Instead, he argues only that his fraud claim is based on his reliance on oral representations that the Defendants would continue operating the Portal Entities. As with the breach of contract claim, these allegations of oral representations have suddenly materialized only once his prior individual claims were in danger of dismissal. But Defendants' motion to dismiss the Amended Complaint was directed at precisely whether reliance on these representations was justified. Dkt. 66 at 15-16 ("Once he had this realization, he could not reasonably claim to be relying on representations from the same individuals he believed were actively trying to coerce him out of his 'rightful ownership.'"). It is not a response for Plaintiff to simply restate that he relied on the representations at issue, when he does not even attempt to explain why such purported reliance was justified.

And as the original motion argued at length, when Lall himself pled that he believed he was being coerced as part of a "scheme," and knew the Portal entities were being dissolved contrary to an oral agreement, and believed he was being "cut out" of his rightful share, and had been fired, and had been locked out of the companies' files, and was accidentally being sent paychecks under the name of the new entities, it should have "set off bells." *See* dkt. 66 at 15-16; *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1520-21 (9th Cir. 1993). Lall cannot claim at quite incredible length in the Amended Complaint that he

thought the Defendants were involved in an "illegal" scheme to coerce him out of his Portal ownership, and simultaneously claim he justifiably trusted representations from them that they would keep managing the Portal Entities for his benefit as a shareholder. Even in his Opposition, he cannot help himself from claiming their intention to undermine his rights was "obvious." Dkt. 72 at 23. But it is equally obvious that if you believe all these things about someone, you cannot justifiably rely on their representations to the contrary.

As for the economic loss rule, Lall's response is similarly terse. He responds with only two sentences citing the general rule in *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024) that the economic loss rule does not apply to fraud claims. He does not respond to the post-*Rattagan* cases cited by Defendants (or the numerous cases collected within them). Dkt. 66 at 17-18. Those cases make clear that a fraud claim cannot be based on breach of contract—because if it is, then whatever it is titled, it is in substance a claim for breach of contract and not fraud. The "fraud" claim as articulated in the Amended Complaint relates only to allegations that a promise that Defendants "would continue managing the Portal Entities even after his removal as an employee, director, and officer of the same" was not kept. Dkt. 60 at ¶ 220. There are no further details pled about what was supposedly said, but as pled, that is a promise to adhere to a contract. And Lall pleads that there was, in fact, an oral contract governing this subject matter. It cannot now be recast as an alleged fraud.

**F. Lall's Constructive Trust and Declaratory Judgment Claim Fails**

Lall also attempts to recast his constructive trust / declaratory judgment claim as merely a remedy for his unjust enrichment and breach of fiduciary duty claims. Dkt. 72 at 24. But by stipulating for the first time in his Opposition that he is only seeking these as remedies, he has effectively mandated their dismissal as stand-alone causes of action. *See, e.g., Moreno v. Citibank, N.A.*, No. C 09-5339 CW, 2010 U.S. Dist. LEXIS 25955 at *12-14 (N.D. Cal. Mar. 19, 2010) (dismissing claim "with prejudice because rescission is a remedy, not a cause of action"); *Cuviello v. Feld Entm't, Inc.*, No. 13-CV-03135-LHK,

2014 U.S. Dist. LEXIS 49170 at *25 (N.D. Cal. Apr. 7, 2014) ("Accordingly, because injunction is a remedy, and not a cause of action, the Court dismisses Plaintiff's injunction claim with prejudice."); *Phx. Techs. Ltd. v. DeviceVM*, No. C 09-04697 CW, 2009 U.S. Dist. LEXIS 114996 at *15-17 (N.D. Cal. Dec. 8, 2009) ("The constructive trust allegation is dismissed as a claim, but is construed as a remedy.").

Lall also claims that he is now basing his claim not on alter ego liability, but a specific theory of successor liability. He inexplicably cites *Polius v. Clark Equip. Co.*, 802 F.2d 75 (3d Cir. 1986), a case from 1986 involving the law of the **United States Virgin Islands** (not the British Virgin Islands). Lall cites it for its description of the elements of the "continuity of enterprise" exception. Dkt. 72 at 24. But *Polius* specifically describes that as a "minority doctrine" of product liability law which had not been addressed by the Delaware Supreme Court. *Id.* at 79. It then rejected the theory's application: "We conclude, therefore, that no theory of corporate successor liability supports the plaintiff's claim against Clark." *Id.* at 84.

Nothing has changed in the forty years since this decision, and no court in Delaware has adopted this doctrine to Defendants' knowledge. Plaintiff then cites a different theory in Delaware—the "mere continuation" theory. *Monroe v. FTS USA, LLC Unitek USA LLC*, No. 25-362-JLH-LDH, 2026 U.S. Dist. LEXIS 46104 at *18 (D. Del. Mar. 5, 2026). But even *Monroe* admits that Delaware courts construe this exception "very narrowly" to apply only when it is the "the same legal entity" and "not just a continuation of the same business." *Id.* And "[t]he continuation theory of corporate successor liability has been construed narrowly by Delaware courts." *Ross v. DESA Holdings Corp.*, No. 05C-05-013 MMJ, 2008 Del. Super. LEXIS 369 at *11-12 (Super. Ct. Sep. 30, 2008). "Mere continuation requires that the new company be the same legal entity as the old company." *Id.* "Imposition of successor liability is appropriate only where the new entity is so dominated and controlled **by the old company** that separate existence must be disregarded." *Id.* (emphasis added).

No pleadings here even attempt to suggest that the old companies (Portal) dominate and control the new companies. And *Monroe*—Plaintiff's own case—admits that to qualify as "the same legal entity," the crucial element is "the common identity of the officers, directors, or stockholders" across both entities. *Monroe*, 2026 U.S. Dist. LEXIS 46104 at *18. But Lall himself pleads that he was an officer, director, and stockholder of the original entities, and is no longer any of these in the successors. They are thus not the "same legal entity" as required under this narrow exception.

This means as to Puffer Foundation (the Cayman Islands entity), Plaintiffs cite no law at all supporting successor liability. As to Puffer Labs, the Delaware entity, he cites only law concluding that there is no such applicable doctrine in Delaware. This claim is easily dismissed as to these Defendants.

As to Puffer Staking Limited (the **British** Virgin Islands defendant), he cites only *In re Tyson*, 433 B.R. 68 (S.D.N.Y. 2010), applying English law. But that case admits that "veil piercing is quite rare under English law" and "extremely limited indeed." *Id.* at 86. And under English law, "although evidence of impropriety is necessary, it is not in itself sufficient to justify veil-piercing." *Id.* at 87. Further, as with unjust enrichment, under English law this veil-piercing is not permitted if other remedies exist: "where the plaintiff may recover in fraud or 'deceit' against a defendant directly, that path is preferable to indirect liability via veil-piercing." *Id.* at 89-90. Lall is raising just such claims, among many others. The fact that he sat on several of these remedies until the statute of limitations expired does not mean that they did not exist, but rather that he chose not to exercise them.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

DATED: June 18, 2026

**KNEUPPER & COVEY, PC**

/s/Kevin M. Kneupper

Kevin M. Kneupper, Esq.

*Attorney for Defendants Amirhossein Forouzani, Jason Andrew Vranek, Puffer Labs Corp., Puffer Foundation, and Puffer Staking Limited.*