United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VISHAL LALL,

Plaintiff,

v.

AMIRHOSSEIN FOROUZANI, et al.,

Defendants.

Case No. 25-cv-04948-EMC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Docket No. 66

Plaintiff Lall, a co-founder of the block chain company Portal, brings suit against his co-founders for allegedly diverting Portal's assets and opportunities to a new block-chain company, Puffer. Plaintiff brings claims of breach of contract and breach of fiduciary duty, as well as associated claims. Defendant moves to dismiss on all counts.

## I. BACKGROUND

### A. Factual Background

In 2020, three data scientists — Plaintiff Lall, Forouzani, and Vranek —, developed a decentralized search engine with privacy enhancing features. Dkt. No. 59 ("FAC") ¶ 33-37. The trio decided to form a company based on this software and name it "Portal." *Id.* ¶ 42. Lall and Vranek worked on building the company's technical product, while Forouzani focused on raising capital. *Id.* ¶ 45. He did so with the help of the personal network of Christina Chen, with whom he had a romantic relationship. *Id.* The other co-founders were unaware that Forouzani and Chen's relationship was romantic in nature. *Id.* ¶ 41.

In May, Lall, Forouzani, and Vranek (hereafter the "Portal Founders") made a pitch together to Arcanum Capital, which became Portal's first investor. *Id.* ¶ 51. Arcanum Capital

invested $250,00 in Portal through a token purchase. *Id.* ¶ 53. Arcanum's investment was delivered to a digital assets wallet in the form of dollar-denominates stablecoins. *Id.* ¶ 55. The three portal founders held the only keys to this wallet. *Id.*

The Portal Founders formalized their roles, with Forouzani as CEO, Vranek as Chief Technology Officer, and Lall as Chief Product Officer. *Id.* ¶ 52. In early July 2022, the Portal Founders incorporated Portal Oracle, a Delaware corporation, as their domestic operating entity. *Id.* ¶ 59. The Portal Founders also incorporated two off-shore entities: Portal B.V.I., to ultimately issue Portal tokens, and Portal Foundation, a Cayman Islands entity intended to function as a treasury for the Portal entities. *Id.* ¶ 60. These three entities, Portal Oracle, Portal B.V.I., and Portal Foundation constituted the Portal Entities. The Portal Founders received an equal portion of Portal Oracle Corp.'s equity (6 million shares each). *Id.* ¶ 59. The Portal Founders had exclusive signer authority for the Portal Entities' bank accounts and power to approve transfer of assets from any of the Portal Entities. *Id.* The Portal Founders set aside 30% of their unissued Portal tokens for outside investors, and 20% for the Portal project team with 10% of these reserved for the founder to split equally, amounting to 3.33% per founder. *Id.* ¶ 66.

Also in July 2022, Forouzani proposed making Chen the company's Chief Marketing Officer. *Id.* ¶ 67. Lall and Vranek were uncomfortable with this proposal due to Forouzani's romantic relationship with Chen; they became aware of the relationship and declined to elevate her. *Id.* ¶¶ 67, 75.

In late July, 2022, Jump Crypto, another investor, invested $300,000 in Portal in exchange for 0.6% of Portal's forthcoming digital tokens. *Id.* ¶ 68. Jump Crypto executed an agreement with Portal B.V.I. *Id.* ¶ 68. In August, IoTeX, a third investor, invested $100,000 in Portal and transferred funds to Portal's digital wallet, bringing the total outside investment in the company to $650,000. *Id.* ¶ 70. In September, the individual Defendants converted $220,00 of Portal's digital assets to U.S. dollars, with the proceeds going to Portal Oracle's financial accounts. *Id.* ¶71.

In October, 2022, the Portal company made a pivot to building a "non-custodial and slash-resistant liquid staking protocol" with the Ethereum Foundation, a non-profit that funds blockchain development. *Id.* ¶72. The discussions about this product were between Ethereum and

United States District Court
Northern District of California

Portal. *Id.* at ¶ 73. Following a meeting, a Ethereum representative told Lall that the Ethereum Foundation was interested in providing a grant to Portal, but it could take 2-3 months. *Id.* at ¶ 74. Vranek made the company's pivot official in mid-October with a post stating "Portal is a non-custodial and slash-resistant staking protocol built on Ethereum 2.0 that allows stakers to earn more." *Id.* at ¶ 76. The Portal Founders reworked their pitch deck to reflect the pivot and presented the new concept of Portal to third-parties, including Jump Crypto. *Id.* at ¶ 77.

In late October, Forouzani suggested rebranding with a "water animal" logo and posted a puffer fish logo in a team chat. *Id* ¶ 81. In another chat about the company pivot, Chen wrote that she strongly suggested retaining the Portal brand name, because they had used that brand to talk to "hundreds of investors" and signed contracts with that name. *Id.* ¶ 82.

On the morning of November 2, 2022, Forouzani arranged a meeting Lall. *Id.* ¶ 84. At the meeting, to Lall's surprise, Forouzani requested that Lall step down from the Portal entities. *Id.* Forouzani added Vranek and Portal's CPA to the call, and declared an "impromptu board meeting." *Id.* Forouzani read from a prepared statement and pressured Lall to sign exit documents in twenty-four hours. *Id.* Fourouzani stated that they would buy back the shares owned by Lall as part of his separation, which included 6,000,000 shares in Portal Oracle Corp. and 16,666 shares in Portal Oracle Limited. *Id.*

Lall refused to agree or sign any exit documents. *Id.* ¶ 85. On November 5, the other founders locked Lall out of the Portal corporate files and systems. *Id.* ¶ 87. On November 11, Forouzani and Vranek voted to remove Lall as founder, director, officer, and Chief Procurement Officer from the Portal Foundation, and terminated his employment at Portal Oracle Corp. *Id.* ¶ 70. On November 15, they also held a vote to remove Lall as a director of Portal Oracle Corp. *Id.* ¶ 89. Lall stated at the meeting that he believed his co-founders were cutting him out of the company due to his discomfort with Forouzani and Chen's relationship and her increased influence. *Id.* ¶ 90.

The Individual Defendants (Forouzani and Vranek) began to remove references to Portal from the internet, changed Portal names to Puffer, and moved all Portal code to a Puffer-branded account. *Id.* ¶ 95. The Individual Defendants began to pay for "Puffer" services from Portal

Oracle's U.S. bank account, including Puffer-branded Github, Google, Microsoft, and Zoom accounts. *Id.* ¶ 96. The Individual Defendants also used the Portal Oracle account to pay for their flights to a New York conference, at which they publicly declared that "We are no longer Portal, we are Puffer." *Id.* ¶ 96. The same day, on December 1, 2022, the Individual Defendants formally incorporated the first Puffer entity, Puffer Stakes Limited, in the British Virgin islands, with themselves as sole directors. *Id.* ¶ 98. The Individual Defendants transferred Portal company information to the Puffer website, including the list of Portal's investors. *Id.* ¶ 99. However, the investments from Jump Crypto, Arcanum Capital, and IoTeX remained in Portal's cryptocurrency wallet until late February 2023. *Id.*




*Id.* ¶ 128 (graphic depicting "Portal's Public Marketing v. Puffer's Public Marketing Two Months Apart")

In December and January, Defendants incorporated further Puffer entities. Puffer Foundation was incorporated in the Caymen Island. *Id.* ¶ 100, 101. The same day of incorporation, the Ethereum Foundation posted that it was awarding Puffer an Ethereum Foundation grant. *Id.* ¶ 100.

On February 24, 2023, the same day Puffer Labs Corp obtained a certificate to operate in California, the Individual Defendants transferred the equivalent of $400,00 in digital assets out of

Portal's digital wallet in ten transactions over three hours, leaving the wallet empty. *Id.* ¶¶ 105-106. The assets were transferred to Puffer B.V.I. and subsequently disbursed to the Puffer Foundation and Puffer Labs. *Id.* ¶ 109. The individual defendants stated in discovery that these transactions were executed in California, while they were full-time Portal employees in California, and that their purpose was to "roll over" the proceeds from the Portal Entities' investments for the benefit of the Puffer entities. *Id.* ¶ 106. The Portal Entities received no consideration for these withdrawals. *Id.* ¶ 107.

FEB 23, 2023

| | | | | |
|---|---|---|---|---|
| 31 | Sent | -4.53488 ETH | 10:58 PM | Success |
| 30 | Sent | -989.21825 USDT | 10:50 PM | Success |
| 29 | Sent | -7.03K USDC | 10:48 PM | Success |
| 28 | Sent | -100,000 USDC | 10:34 PM | Success |
| 27 | Sent | -100,000 USDC | 10:17 PM | Success |
| 26 | Sent | -100,000 USDC | 10:07 PM | Success |
| 25 | Sent | -100,000 USDC | 9:36 PM | Success |
| 24 | Sent | -90 USDC | 8:47 PM | Success |
| 23 | On-chain rejection | | 8:39 PM | Success |
| 22 | Sent | -10 USDC | 8:10 PM | Success |

*Id.* ¶ 105 (graphic depicting the withdrawals of $400,000 in Portal funds by the Individual Defendants from the Portal digital wallet).

In April, 2023, the Individual Defendants wound down the Portal Foundation. *Id.* ¶ 110. In June, they liquidated Portal BVI. *Id.* Despite having terminated Lall's Portal employment, "Puffer Labs" inadvertently paid Lall for two pay periods. *Id.*

While investors IoTex, Arcanum, and Jump Crypto initially executed Simple Agreements for Future Tokens (SAFTs) with Portal B.V.I. in 2022, the Individual Defendants later caused these same investors to execute "Amended and Restated" SAFTs of equivalent value with Puffer B.V.I., based on the premise that Puffer B.V.I. was party to the initial agreements – i.e., that Puffer B.V.I. is the legal successor to Portal B.V.I. and has "authority and standing to act in its shoes."

United States District Court
Northern District of California

*Id.* ¶ 116. Defendants have produced a "novation" agreement signed by Defendant Forouzani on behalf of Portal BVI and Puffer BVI that purports to transfer the Jump Crypto $300,000 investment with Portal to Puffer, for no consideration. *Id.* ¶ 117. The Individual Defendants held out Puffer to investors and to the public to be a mere rebrand of Portal, as opposed to a new legal entity, to their other investors. *Id.* ¶¶ 121-127. Defendants' marketing and pitch materials to investors reflect the same, presenting Puffer as a continuation of Portal. *Id.* ¶ 129.

In the summer of 2023, Puffer Finance raised $5.5 million in funding from new investors, at least some of whom had expressed an interest in investing in Portal. *Id*. at 136. According to public Puffer materials, Defendants have since raised at least an additional $18 million. *Id.* Puffer's investors have publicly stated that they consider Puffer a successor entity to Portal. *Id.* ¶ 137.

Plaintiff alleges that since November 2022, the Individual Defendants have effectively abandoned the Portal Entities, taking actions at Portal's direct expense and cutting Lall out from the company. *Id.* ¶ 144. As of March, 2026 Delaware Portal Oracle Corp. was a delinquent entity with $350,000 in taxes due. *Id.* ¶ 145.

Plaintiff brings the following causes of action:

1. Breach of Contract (Direct Claim against Individual Defendants)
2. Breach of Covenant of Good Faith and Fair Dealing (in the altnerative)
3. Quantum Meruit (in the alternative)
4. Unjust Enrichment (in the alternative)
5. Breach of Fiduciary Duty (Derivative Claim against Individual Defendants)
6. Breach of Fiduciary Duty (Direct Claim)
7. Unjust Enrichment (All Defendants)
8. Fraud (Individual Defendants)
9. Declaratory Judgment and Constructive Trust

**A. Procedural History**

This action was initially filed on June 11, 2025. Dkt. No. 1. On December 4, 2025, this

Court heard and ruled on Defendants' motions to dismiss for lack of personal jurisdiction over the two foreign Puffer entities and for failure to state a claim. Dkt. No. 47. The Court allowed jurisdictional discovery to resolve the personal jurisdiction issue. *Id.* Plaintiff filed an amended complaint on April 3, 2026. Dkt. No. 60. This motion to dismiss followed. Dkt. No. 66 (Mot.).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

### A. Breach of Contract and Good Faith and Fair Dealing (Counts I and II)

Plaintiff alleges against the Individual Defendants claims for breach of contract, or in the alternative, breach of the covenant of good faith and fair dealing, relating to an oral agreement that he labels the "Founders' Token Agreement." There is no dispute that the putative contract

between Lall and the Individual Defendants Vranek and Forouzani was not written; it was oral. Defendants assert that both claims are time-barred.

The statute of limitations for breach of an oral contract is two years. Cal. Code Civ. Proc. § 339; *see also Durbin v. Hartford Life Ins. Co.*, No. 13CV52 BEN (JLB), 2014 U.S. Dist. LEXIS 111604 at *18-19 (S.D. Cal. Aug. 11, 2014) (statute of limitations for breach of the covenant of good faith and fair dealing is two years when underlying contract is oral). And "[t]he general rule is that a cause of action for breach of contract accrues at the time of breach." *Whorton v. Dillingham*, 202 Cal. App. 3d 447, 456 (Cal. App. 1988). The parties here dispute what constituted the breach of the oral contract, and whether earlier actions by Defendants constituted repudiation sufficient to start the running of the limitations clock.

"There can be no actual breach of a contract until the time specified therein for performance has arrived." *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (Cal. 1975). If a party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived, an anticipatory breach is said to have occurred. *Romano v. Rockwell Internat., Inc.,* 14 Cal. 4th 479, 489 (Cal. 1996). "[I]n the event the plaintiff disregards the repudiation, the statute of limitations does not begin to run until the time set by the contract for performance." *Id.* And "whether the breach is anticipatory or not, when there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract." *Id.* In short, at the plaintiff's option, the statute can be deemed to start at the time of performance and actual, not the time of the earlier anticipator breach.

The original complaint in this case was filed on June 11, 2025, meaning that the cause of action would be time barred if it accrued prior to June, 2023.[1] Plaintiff alleges that the oral contract was formed in July, 2022, and contemplated that in exchange for acting as co-founders of

[1] Plaintiff asserts that his new causes of action in the amended complaint relates back to his initial complaint. Defendant appears to concede that the amended complaint relates back but contends that this is "irrelevant," because the statute of limitations had already run by June, 2025. Reply at 8. The Court treats the relevant filing date as June, 2025, the date of the original complaint.

Portal, the co-founders would receive an equal split of 10% of the Portal token supply upon issuance of the tokens. FAC ¶¶ 59-67. The Portal tokens were never issued. Instead, in October, 2024, the individual defendants issued Puffer tokens that were identical to the planned Portal tokens in all regards except for the fact that they were now called "Puffer" tokens. FAC ¶ 159. No Puffer tokens were provided to Plaintiff. Plaintiff contends that this issuance of the Puffer tokens in October 2024 without providing tokens to Plaintiff constitutes the relevant breach of the agreement. FAC ¶¶ 159-160.

The oral contract as alleged does not fix a specific date for performance but it does identify an event after which performance must be made – the issuance of the Portal tokens. Plaintiff contends, plausibly, that there could be no breach until issuance occurred and Plaintiff was not provided shares. Plaintiff has alleged a breach occurring in October 2024 when the Portal tokens were issued. This would render his filing of the complaint timely within the two-year statute of limitations of the breach.

Defendant contends that breach occurred earlier, when Plaintiff alleges Defendants "effectively abandoned the Portal Entities," refuting the contract. Mot. at 3; Reply at 4-5. While this event could have formed the basis for an anticipatory breach claim, the relevant question is not whether Lall could have brought such a claim prior to June of 2023. As noted above, a plaintiff may elect to rely on the actual breach of contract as the starting date of the limitations period despite an anticipatory breach. *Romano,* 14 Cal. 4th at 489. His claims for breach of contract and of the implied covenant are timely.

**B. Quantum Meruit Claim (Count III)**

The requisite elements of quantum meruit are (1) the plaintiff acted pursuant to "an explicit or implicit request for the services" by the defendant, and (2) the services conferred a benefit on the defendant. *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 24 Cal. App. 5th 153, 180 (Cal. App. 2018). This reflects the principle that "[C]ompensation for a party's performance should be paid by the person whose request induced the performance." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 249 (Cal. App. 2002) (citing *Earhart v. William Low Co.* 25 Cal. 3d

503, 515 (Cal. 1979)).

The premise of Plaintiff's quantum meruit claim is that "Lall should be compensated for the services he rendered, separate and apart from his ordinary salary income" with "an equal allocation of Portal Tokens," *e.g.*, the 3.33% of the token issue that was the subject of the "Founders' Token Agreement." FAC ¶¶ 178, 181. As a threshold matter, Lall pleads that there was an actual agreement covering this additional compensation—the Founders' Token Agreement. Such an agreement, if proven enforceable, would be fatal to his quantum meruit claims, since no claim for an equitably implied contract can lie where an express agreement exists. *See Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (Cal. App. 1996) ("[I]t is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation."). However, Lall pleads his claim in the alternative and is entitled to do so. *See Weinstein v. Katapult Grp., Inc.*, No. 21-CV-05175-PJH, 2022 U.S. Dist. LEXIS 8076, at *11 (N.D. Cal. Jan. 14, 2022) (concluding that a party may allege breach of contract and quantum meruit claims in the alternative because "parties are plainly permitted to plead in the alternative" pursuant Federal Rule of Civil Procedure 8(d)(2)).

The more significant problem for Lall's quantum meruit claim is the requirement that his services be rendered pursuant to a request for services from the other defendants. The complaint makes clear that Lall and the two individual defendants were equal co-founders until Lall was forced out. This is not the more common scenario where the plaintiff's services were requested by the defendant and then not compensated. Here the parties were in a co-founding relationship. However, drawing all inferences in Lall's favor, he alleges that prior to the "Founder Token Agreement," the founders formalized their roles in the company, with Lall as Chief Product Officer and Forouzani as CEO. This structure suggests a degree of hierarchy, and supports that Lall's services as Chief Product Officer could have been at the implicit request of Forouzani, the acting CEO. Of course, to succeed on his claim, Lall would have to show that there are distinct services Fourzani requested and that he performed such services beyond that for which he was compensated through his salary. *See* FAC ¶¶ 180-181.

Defendant's motion to dismiss this count is **DENIED**.

**C. Unjust Enrichment (Counts IV and VII)[2]**

Plaintiff brings two claims for unjust enrichment (Count IV and Count VII). Count IV is pled in the alternative to his contract causes of actions against the individual defendants. FAC 189. Count VII is against all defendants, including the Puffer defendants, for "coordinating the misappropriation of the Portal Entities" and raising $25 million from outside investors based on Portal Oracle's products and intellectual property.

The Ninth Circuit has recognized that a stand-alone cause of action for unjust enrichment sounds in quasi-contract. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The Ninth Circuit has also held that duplicative nature of an unjust enrichment claim is not grounds for dismissal. *See id.* However, for an unjust enrichment claim to proceed, Plaintiff must lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). In *Sonner*, the plaintiff sought "the same sum in equitable restitution as 'a full refund of the purchase price' ... as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete...." *Id.*; *see also Julian v. TTE Tech., Inc.*, No. 20-CV-02857-EMC, 2020 WL 6743912, at *5 (N.D. Cal. Nov. 17, 2020) (dismissing where "Plaintiffs' claim for damages and restitution [were] not really different").

Plaintiff's first unjust enrichment claim is duplicative of his quasi-contract claim. While the duplicativeness alone is not necessarily a bar at the pleading stage, the fact that Plaintiff has a viable contract or quasi-contract claim suggests that there is an adequate remedy at law. The restitutionary damages Plaintiff seeks from the Count IV unjust enrichment claim — 3.33% of the

[2] Defendant asserts that Delaware law applies to the unjust enrichment claim but also cites to California law. Mot. at 9. Plaintiff does not cite to anything regarding the unjust enrichment claims or appear to take a position on which law applies. Opp. at 17. Since Defendant does not assert a material difference between Delaware and California law, under California choice of law rules the Court treats the first unjust enrichment claim (sounding in quasi-contract) as asserted under California law but the second to be under Delaware law under the internal affairs doctrine. *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998) ("Under the 'internal affairs' doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated.").

United States District Court
Northern District of California

total supply of Puffer Tokens — are the same as the monetary damages he seeks under his contract and quasi contract claims. *See* FAC ¶ 194. Accordingly, *Sonner* requires dismissal of Count IV. Although the Court applies California law, the Court notes that Delaware law would also call for dismissal. *See e.g., Intermec IP Corp. v. Transcore, LP*, No. N20C-03-254 PRW CCLD, 2021 Del. Super. LEXIS 547, at *37 (Super. Ct. Aug. 16, 2021) (citing *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) ("At bottom, an unjust enrichment claim cannot be used to circumvent an inadequate breach-of-contract claim.").

Lall's Count IV unjust enrichment claim is **DISMISSED**.

Lall's second claim for unjust enrichment, Count VII, is distinct in that it is alleged against the Puffer entities for "coordinating the misappropriation of the Portal Entities."

To plead an unjust enrichment claim, a plaintiff must allege: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Where a party's only standing to assert an alleged impoverishment is derivative as a shareholder, a party may not use "artful pleading" to assert those rights at his own. *Heresniak v. Musk*, No. 22-cv-03074-CRB, 2023 U.S. Dist. LEXIS 89362, at *24 (N.D. Cal. May 22, 2023) (applying Delaware law); *c.f. Bartfield v. Murphy*, 578 F. Supp. 2d 638, 648-49 (S.D.N.Y. 2008) (dismissing shareholder's unjust enrichment claim because asset allegedly misappropriated was corporate asset and thus claim was derivative of corporation's right to recover). Rather, as discussed in greater detail below, those rights must be asserted through a derivative action.

Here, Lall alleges enrichment of the Puffer Entities at the expense of the Portal Entities. Since the alleged unlawful gains are gains belonging to the Portal entities, Lall may not recover for these claims. The right to recover for the Portal Entities' impoverishment belongs in the first instance to the Portal entities, not to him as a stockholder or co-founder, and he may not use an unjust enrichment claim to circumvent the derivative lawsuit mechanism.

Defendant's motion to dismiss Lall's Count VII unjust enrichment claim is **granted**.

**D. Derivative Fiduciary Claim (Count V)**

Plaintiff asserts a shareholder's derivative claim against the Individual Defendants for breach of fiduciary duty owed to Portal Oracle Corp. "[T]he law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders." *Laborers' Local v. Intersil*, 868 F. Supp. 2d 838, 844 (N.D. Cal. 2012). Accordingly, Delaware law applies to this claim.

A shareholder's derivative suit is a mechanism that "enables a stockholder to bring suit on behalf of the corporation for harm done to the corporation." *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004); *see also El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1256 (Del. 2016) ("Derivative standing is a 'creature of equity' that was created to enable a court of equity to exercise jurisdiction over corporate claims asserted by stockholders 'to prevent a complete failure of justice on behalf of the corporation.'"). A shareholder who plausibly pleads that a majority of the corporate directors were not disinterested and independent may bring a derivative suit for breach of the duty of loyalty on behalf of the corporation. *See e.g.*, *In re The Ltd., Inc. S'holders Litig.*, 2002 Del. Ch. LEXIS 28, at *11, *13, *29 (Del. Ch. Mar. 27, 2002).

Under Delaware law, the elements for a breach of fiduciary duty claim are (1) "the existence of a fiduciary duty," (2) "a breach of that duty," (3) "harm to the beneficiary or a benefit wrongly received by the fiduciary," and (4) a "causal linkage between the breach and the remedy sought." *Leo Investments Hong Kong Ltd. v. Tomales Bay Capital Anduril III, L.P.*, 2025 WL 1807887, at *14-15 (Del. Ch. 2025). The duty of loyalty "requires a fiduciary to refrain from self-interested transactions with the corporation unless the terms of such a transactions are entirely fair." *U.S. W., Inc. v. Time Warner Inc., No. Civ. A. No. 14555*, 1996 WL 307445, at *21 (Del. Ch. June 6, 1996).

The Individual Defendants do not contest that Plaintiff has standing to sue in a derivative capacity, nor do they appear to contest that Plaintiff has pled the elements of a fiduciary breach, except that they argue that Plaintiff has not adequately alleged that Portal Oracle Corp itself, rather than the other Portal Entities, suffered the injuries for which he seeks to recover. This argument is

meritless. Portal Oracle Corp. clearly suffered alleged harm. Plaintiff alleges that (1) the individual defendants paid for services for the Puffer Entities out of Portal Oracle's U.S. bank accounts; (2) the individual defendants left Portal Oracle Corp. delinquent with $350,000 in taxes due; (3) the individual defendants transferred more than $400,000 in funds from Portal Foundation to Puffer; (4) the individual defendants executed novation agreements with investors, transferring those investments from Portal B.V.I. to Puffer without consideration; and (5) that the individual defendants usurped Portal Oracle Corp.'s opportunities (e.g., with potential investors). FAC ¶ 11. While financial injuries identified in (3) and (4) were to Portal Foundation and Portal B.V.I., Plaintiff alleges that Portal Foundation was "structured to function as a treasury for the trio of Portal Entities." FAC ¶ 60. The intertwined, tripartite structure of the companies, along with this specific allegation, makes it entirely plausible that the uncompensated transfer of $400,000 from Portal Foundation would harm Portal Oracle Corp., the "domestic operating business." *Id.* ¶ 59. For purposes of the motion to dismiss, Lall has sufficiently plead Defendant's breach of fiduciary duty owed to Portal Oracle causing it harm as enumerated above. Moreover, Lall pleads that the Individual Defendants usurped Portal Oracle Corp.'s corporate opportunities through the launch of Puffer with the same investors who had invested with Portal. *Id.* ¶ 8. Such a loss of opportunities would constitute further harm suffered by Portal Oracle Corp., the company's domestic operating base.

Lall has plausibly pled the elements of a derivative claim, including harm to Portal Oracle Corp. Defendant's motion to dismiss on this count is **denied**.

**E. Direct Fiduciary Claim (Count VI)**

A "stockholder's claimed direct injury must be independent of any alleged injury to the corporation," meaning that "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004); *accord Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988) ("[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury

resulting from a wrong to the corporation."). Breaches involving transfers of assets and misappropriation of corporate opportunities are injuries to the corporation; suits in that instance must be brought as a derivative action. *See SBC Berlin 2012-2014, Ltd.*, 2019 WL 13203776, at *6-7 (N.D. Cal. Oct. 10, 2019) (plaintiff's claims that the directors "breached their fiduciary duties by causing [the company] to transfer all of its assets . . . without any consideration" was derivative); *In re Digex Inc. Shareholders Litig.*, 789 A.2d 1176, 1190 (Del. Ch. Dec. 13, 2000) ("[T]he claim that the defendants usurped a corporate opportunity must necessarily constitute an 'injury' to the corporation and thus be a derivative claim."); *DiRienzo v. Lichtenstein*, 2013 WL 5503034, at *26 (Del. Ch. Sep. 30, 2013) ("DiRienzo has alleged only a traditional usurpation of corporate opportunity claim, which under settled Delaware law is exclusively derivative in nature."). This is the case even when a shareholder alleges that such acts have had the effect of decreasing stock value. *See Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 16 (Del. Ch. 1992) ("[W]here a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature.").

Plaintiff asserts that Defendants breached their fiduciary duties directly as to Lall as a minority investor (and not merely derivatively to the corporation), by "(1) conspiring to single Lall out among shareholders and expropriate the value of his shares for their own benefit; (2) omitting their true intentions to misappropriate Portal Oracle's the Portal Entities' assets without paying any consideration to Lall, for their own benefit; and (3) abandoning Portal Oracle to hinder Lall's ability to seek redress on behalf of the company." FAC ¶ 204. However, each of these claims implicates injuries to the corporation, not Lall. The misappropriation of the Portal entities' assets and the abandonment of Portal Oracle are injuries suffered directly by the Portal entities. And the form of the alleged expropriation of the value of Lall's shares was through the transfer of assets and opportunities from Portal to Puffer. At bottom, the harms Lall asserts were harms first and direct to the corporate entities, second and indirectly to himself.

Accordingly, Lall's claim for direct breach of fiduciary duty is **DISMISSED**.

The Delaware Supreme Court has observed that a court's determination of whether an

United States District Court
Northern District of California

action is derivative or direct can be "outcome-determinative" because in a derivative lawsuit the recovery "flows only to the corporation." *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004); *accord* Kramer v. W. Pac. Indus., Inc., 546 A.2d 348, 351 (Del. 1988) ("Ordinarily, therefore, any damages recovered in [a derivative] suit are paid to the corporation.") However, "[b]ecause the derivative action is fundamentally an equitable proceeding, the court has the power to craft a remedy that is appropriate based on the specific facts and equities of the case." *In re El Paso Pipeline, L.P. Derivative Litig.*, 132 A.3d 67, 122 (Del. Ch. 2015) (*rev'd on other grounds in El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1265 (Del. 2016)). When an entity recovery would benefit the "guilty" stockholders, a court in its equitable discretion may provide a pro rata investor-level remedy to a derivative claim. *Goldstein v. Denner*, No. CV 2020-1061-JTL, 2022 WL 1797224, at *17 (Del. Ch. June 2, 2022); *accord In re El Paso Pipeline*, 132 A.3d at 124 (Del. Ch. 2015) (investor level recovery appropriate for "[c]ases where an entity-level recovery would benefit 'guilty' stockholders, but an investor-level recovery could be more narrowly tailored to benefit only 'innocent' stockholders."). In this case, Lall alleges that the only other shareholders in Portal Oracle are the "guilty" Individual Defendants. It is thus possible that if Lall succeeds on his derivative claim, he may be able to recover as an individual investor, rather than all recovery flowing to the abandoned Portal Oracle. But such remedies questions are premature at this stage in the litigation.

**F. Fraud (Count VIII)**

Under California law, a plaintiff alleging fraud must establish the following elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 87 (2001). Lall alleges that the individual defendants defrauded him by "knowingly misrepresenting and omitting their intentions to continue managing the Portal Entities while he remained a shareholder in Portal Oracle and Portal B.V.I." FAC at ¶ 218. Plaintiff does not identify in his pleadings any specifics about the alleged representation or omission, including when it occurred. At oral argument, Plaintiff

United States District Court
Northern District of California

suggested that the relevant fraud occurred after he was removed from the board and terminated in November 2022, during a later exchange at an unspecified time in which Lall reiterated his position that he continued to hold equity in Portal Oracle despite being removed as a director and cut out of the company and "Forouzani conceded that none of the Individual Defendants' actions above caused Lall to relinquish his equity in Portal Oracle." FAC ¶ 90. Plaintiff appears to have interpreted this concession as a representation that the Individual Defendants would continue to manage the Portal Entities such that equity in them was available.

It is difficult to see how Forouzani's alleged statement constitutes a misrepresentation or omission that justified Plaintiff's reliance. According to Plaintiff's pleading, Forouzani only agreed that Plaintiff continued to retain the same amount of equity in Portal Oracle that he had when he was a director of the company. Technically, that statement remains true to this day. Lall retains his equity in Portal Oracle; it is just that this equity is now worthless. While Lall may have reasonably believed that the Individual Defendants would not act to diminish or deplete stock in a company that they also owned, such a belief does not arise from Forouzani's statement, but the prior acts of Defendants.

Further, when considering the element of justifiable reliance "a plaintiff's particular knowledge and experience should be considered in determining whether the reliance upon the misrepresentation or nondisclosure was justified." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194, 175 Cal. Rptr. 3d 820 (2014). "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable … he will be denied a recovery." *Id.* Such unreasonable conduct includes ignoring "tell-tale danger signals that should have alerted [plaintiff] to the need for further investigation…." *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1520-21 (9th Cir. 1993).

Here, Plaintiff alleges that the fraud occurred after he had already "realiz[ed] that he was being coerced out of his rightful ownership in Portal Oracle and its offshore affiliates." FAC ¶ 85. He had been locked out, terminated, and removed as a director by his co-founders, the Individual Defendants. FAC ¶¶ 86-89. While Lall might not have foreseen at that moment that his co-founders would decide to fully cut him out by creating a new company rather than

persisting with Portal, there were most definitely "tell-tale dangers signals" that would have put Lall on his guard against reliance on any representations (or omissions) made by the Individual Defendants at that point about the future of Portal and Lall's interests in it. Given Lall's "knowledge and experience" as of November of 2022, reliance on his on his co-founder's representations about their intentions towards the company from that point on would not, as a matter of law, have been justified or reasonable. *See Salstein v. HA-Lo Indus.*, 82 F. Supp. 2d 1080, 1087 (N.D. Cal. 1999) (quoting *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991)) ("[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.").

Defendant's motion to dismiss the fraud claim is **granted**.

**G. Declaratory Judgment/ Constructive Trust (Count IX)**

Lall seeks a declaratory judgment that the Puffer entities are successors of the Portal entities and imposing a constructive trust upon them.

Under Delaware law, a constructive trust is an available remedy for the recovery of money where defendants breached a fiduciary duty or have been unjustly enriched. *See In re Green Field Energy Servs., Inc.*, 610 B.R. 760, 775 (D. Del. 2019). A constructive trust allows the court to treat defendants who hold property as if they were holding it in trust for the plaintiff. *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431-JTL, 2024 Del. Ch. LEXIS 17, at *55 (Del. Ch. Jan. 25, 2024). A constructive trust may be imposed upon (i) "specific property [or] identifiable proceeds of specific property," that (ii) "resides in an identifiable fund to which the plaintiff can trace equitable ownership." *Parseghian ex rel. Gregory J. Parseghian Revocable Trust v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *9 (Del. Ch. June 21, 2022). "While courts have listed elements for constructive trusts, it has also been found that no rigid requirements exist for imposing a constructive trust, and any factors considered relevant to the establishment of a constructive trust are simply guidelines, their rigid application not being required." *Principal Growth*, 2024 Del. Ch. LEXIS 17, at *55; *see Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) (the constructive trust is "an equitable remedy of great flexibility and

generality").

However, "a constructive trust is a remedy, not a substantive cause of action." *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *6 n.60 (Del. Ch. Apr. 28, 2014); *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993) (a constructive trust "is viewed as 'a remedial [and] not a substantive' institution") (quoting *McMahon v. New Castle Associates*, 532 A.2d 601, 608 (Del. Ch. 1987)); *In re JMO Wind Down, Inc.*, 2018 WL 1792185, at *9 n.16 (Bankr. D. Del. Apr. 13, 2018) (same).

Lall's claim for a constructive trust is **dismissed** to the extent asserted as an independent cause of action. To the extent Defendants move to strike constructive trust as a remedy Lall may assert, that motion is **denied**.

## IV. CONCLUSION

The Court

- **Denies** the motion to dismiss Count I for Breach of Contract
- **Denies** the motion to dismiss Count II for Breach of Good Faith and Fair Dealing
- **Denies** the motion to dismiss Count III in Quasi-Contract
- **Grants** the motion to dismiss Count IV for unjust enrichment
- **Denies** the motion to dismiss Count V for derivative breach of fiduciary duty
- **Grants** the motion to dismiss Count VI for direct breach of fiduciary duty
- **Grants** the motion to dismiss Count VII for unjust enrichment
- **Grants** the motion to dismiss Count VIII for fraud
- **Grants** the motion to dismiss Count IX for declaratory judgment/constructive trust as a standalone cause of action, but denying to the extent Defendants seek to strike constructive trust as a remedy.

Dismissal is without further leave to amend. Plaintiff may seek leave to amend if supported by new facts obtained in discovery.

**IT IS SO ORDERED**.

Dated: 8/14/2026

EDWARD M. CHEN
United States District Judge